## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>   v.<br><br>JUSTIN NICHOLAS JENNINGS,<br><br>               Appellant. | No.  52275-6-II<br><br><br><br>PUBLISHED OPINION |

GLASGOW, J.—Justin Nicholas Jennings shot and killed J. Christopher Burton. Jennings claimed at trial that he shot Burton in self-defense. A jury found him guilty of second degree felony murder. He appeals his conviction.

Jennings argues that the trial court violated his constitutional right to present a defense by excluding a toxicology report showing that Burton had methamphetamine in his body at the time of his death. Jennings also argues that the evidence was not sufficient to support a guilty verdict for second degree felony murder. Jennings asserts that the trial court abused its discretion and violated his right to trial by jury by not striking a witness's comment that Jennings argues was an improper opinion on guilt. Finally, Jennings asks this court to strike the imposition of the criminal filing fee and DNA collection fee. The State concedes these fees should be stricken.

We hold that the exclusion of the toxicology report did not violate Jennings's constitutional right to present a defense and any evidentiary error was harmless. The evidence was sufficient to support Jennings's second degree felony murder conviction. Finally, any error arising from the witness's comment was harmless. We affirm Jennings's conviction. We accept the State's

concession and remand for the trial court to strike the filing fee and DNA collection fee from Jennings's judgment and sentence.

FACTS

A.      Background

Jennings went with his friend Lance Redman to get Redman's car from a mobile home in Puyallup, Washington, where Redman had been living but had recently been kicked out. Jennings had been to the home many times and knew that drug activity occurred there. Jennings also knew Redman could be a "hothead." Verbatim Report of Proceeding (VRP) (June 12, 2018) at 1309. Jennings testified that he went to defuse hostilities between Redman and others at the house. Jennings armed himself with bear spray and a gun.

When they arrived, Redman saw that his car was not at the home. Burton and Gary Tongedahl were in the yard. Redman demanded they go inside to figure out where his car was. Jennings had bear spray in one hand and a gun in the other, and Redman was also carrying a gun.

Jennings was on high alert when he entered the home because he knew violent events had recently occurred there. Burton and Redman began arguing in the living room, and Redman had his gun out. Jennings was familiar with the behavior of people who consumed methamphetamine, and Jennings realized Redman was high on methamphetamine and acting aggressively. Jennings believed that Burton was also high on methamphetamine, based on his behavior and appearance. Jennings testified, "as soon as we started to enter the mobile home, [Burton] . . . became aggressive in response to [Redman] being aggressive and loud." VRP (June 11, 2018) at 1298. Jennings described how Burton "aggressively move[d] toward[] [Redman]" even though Redman was

armed, leading Jennings "to believe . . . [Burton] was not in [his] right mind." VRP (June 12, 2018) at 1323-24.

Burton and Redman argued about the car and then began to scuffle, wrestling in the foyer of the house. Jennings sprayed his bear spray at them to break up the fight.

Burton then turned around and started walking toward Jennings, who backed up. Jennings believed Burton had Redman's gun. Other witnesses disputed whether and how far Burton moved toward Jennings and whether Burton appeared to have anything in his hands. One witness, Albert T. Duane, testified that Burton was rubbing his eyes.

Afraid Burton was reacting violently because he was high on methamphetamine, Jennings said he feared for his life. Jennings fired his gun and hit Burton twice. Duane testified that Jennings looked at Burton immediately after shooting him and said, "I got you, dog," before running out the door. VRP (June 7, 2018) at 990. Redman also left the house.

Burton was not armed. He died at the scene shortly after the shooting and before the ambulance arrived.

Jennings was arrested the next day. He was charged with second degree intentional murder (RCW 9A.32.050(1)(a)), second degree felony murder predicated on second degree assault (RCW 9A.32.050(1)(b)), and unlawful possession of a firearm (RCW 9.41.040(1)(a)).[1]

B.      Procedural History

        1.      Toxicology report

Jennings's defense was that the killing was justified because he feared for his life and he shot Burton in self-defense. To corroborate his claim that his subjective fear of Burton was

---

[1] Jennings pleaded guilty to unlawful possession of a firearm.

reasonable, Jennings planned to present a medical examiner's toxicology report that showed Burton had methamphetamine in his body at the time of his death.

The State moved to exclude the toxicology report, arguing lack of relevance to Jennings's belief at the time of the shooting, and the trial court granted the State's motion. Jennings took exception to the trial court's ruling, arguing that it prevented him from presenting a defense. The trial court also ruled, and the parties agreed, that the State could not hold any absence of toxicology evidence against the defense.

### 2. Tongedahl's testimony

During the defense's cross-examination of Tongedahl, Burton's friend who witnessed the shooting, the defense attempted to impeach him with a prior inconsistent statement Tongedahl made to police. Tongedahl blurted out that on the day he made the statement, he had just "witnessed [his] closest friend being murdered." VRP (June 6, 2018) at 874. Both the defense and the State moved to strike, without explaining the basis for their motion. The trial court denied both motions to strike and directed the defense to continue cross-examination. Jennings's counsel repeated Tongedahl's comment twice in cross-examination, using it to undermine Tongedahl's credibility by suggesting that his memory of the incident was distorted by his emotional response to seeing his best friend shot.

### 3. Jury instructions

To convict Jennings of felony murder, the jury had to find that Jennings caused Burton's death in the course of and in furtherance of a felony or in immediate flight from a felony. The alleged underlying felony in this case was second degree assault occurring when Jennings sprayed

4

Burton with bear spray. On the second degree intentional murder charge, the jury was given a lesser included offense instruction for first degree manslaughter.

The jury also was instructed on self-defense. The self-defense instruction explained that the State had to prove beyond a reasonable doubt that the killing was not justifiable. The killing would be justifiable if Jennings reasonably believed Burton intended to inflict death or great personal injury on himself or someone else and Jennings reasonably believed there was imminent danger. The jury also received an initial aggressor instruction, explaining that if it decided that Jennings provoked Burton first, Jennings could not claim self-defense.

4.      Closing

In closing, the defense argued primarily that Jennings acted in self-defense. Counsel emphasized that Jennings thought Burton was "amped up on meth" when he aggressively approached Jennings. VRP (June 13, 2018) at 1492.  Then in rebuttal, the State argued that, although Jennings believed Burton was high on methamphetamine at the time of the shooting, Jennings had "no proof of it at that time" because he didn't know Burton and did not know for a fact that he had consumed methamphetamine. *Id.* at 1540.[2]

5.      Verdicts and sentence

The jury convicted Jennings of first degree manslaughter and second degree felony murder. The trial court vacated the manslaughter conviction, and Jennings was sentenced for second degree felony murder and unlawful possession of a firearm charge, to which he had previously pleaded guilty.

---

[2] Jennings moved for a mistrial, arguing that the State's comment was misleading in light of the toxicology report that had been excluded. The trial court denied the motion for mistrial, and Jennings did not assign error to that decision.

At sentencing, Jennings argued he was indigent and could not pay nonmandatory legal financial obligations. The trial judge signed an order of indigency and orally ruled that he would impose only mandatory financial obligations. The trial court imposed the $200 filing fee and $100 DNA collection fee.

Jennings appeals his conviction. He also appeals the judgment and sentence provisions imposing the filing fee and DNA collection fee.

## ANALYSIS

### I. TOXICOLOGY REPORT

Jennings argues that the trial court violated his constitutional right to present a defense and abused its discretion by excluding the toxicology evidence showing that there was methamphetamine in Burton's body at the time of his death. We conclude there was no constitutional error, and any evidentiary error arising from the exclusion of the toxicology report was harmless.

A.     Right to Present a Defense and Standard of Review

Criminal defendants have a constitutional right to present a defense. U.S. CONST. amends. V, VI, XIV; WASH. CONST. art. I, §§ 3, 22; *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). In *State v. Arndt*, the Washington Supreme Court recently clarified the two-part analysis for determining whether the exclusion of evidence violates a defendant's constitutional right to present a defense. 194 Wn.2d 784, 797-98, 453 P.3d 696 (2019). Appellate courts must not only review the trial court's evidentiary rulings for an abuse of discretion, but must also consider de novo, in every case where the right to present a defense is raised, whether those rulings deprived the defendant of their constitutional right to present a defense. *Id.*; *see also*

*generally State v. Darden*, 145 Wn.2d 612, 621-22, 41 P.3d 1189 (2002) (applying a test similar to *Arndt*'s in the context of the right to confrontation).

*Arndt* clarified that the constitutional analysis is required even where the trial court did not abuse its discretion in making its evidentiary ruling. Although we generally avoid unnecessarily addressing constitutional questions, under *Arndt*, the constitutional question must be analyzed even absent evidentiary error. 194 Wn.2d at 812. As a result, in this case we address the constitutional question first because if there were a constitutional violation, there is no need to address whether an evidentiary error has occurred.

If the trial court's exclusion of the toxicology report violated Jennings's right to present a defense under the Sixth Amendment as described in *Arndt*, then we next perform a constitutional harmless error analysis. If the exclusion of the toxicology report did not violate the constitutional protections described in *Arndt*, or if any error was harmless under the constitutional harmless error analysis, we then turn to whether the trial court abused its discretion in applying the evidentiary rules and whether any evidentiary error was harmless under the nonconstitutional harmless error analysis. *State v. Barry*, 183 Wn.2d 297, 317, 352 P.3d 161 (2015).

B.      Self-defense

Under Washington law, "homicide is justifiable when committed in lawful self-defense or defense of another if it is reasonable for the person defending himself to believe that the other person intends to kill or inflict great personal injury and is in imminent danger of doing so." *State v. Espinosa*, 8 Wn. App. 2d 353, 361, 438 P.3d 582 (2019). The defendant's "use of force is lawful and justified where the defendant has a 'subjective, reasonable belief of imminent harm from the victim.'" *State v. Grott*, 195 Wn.2d 256, 266, 458 P.3d 750 (2020) (quoting *State v. LeFaber*, 128

Wn.2d 896, 899, 913 P.2d 369 (1996)). "'[E]vidence of self-defense must be assessed from the standpoint of the reasonably prudent person standing in the shoes of the defendant, knowing all the defendant knows and seeing all the defendant sees.'" *Id.* (quoting *State v. Riley*, 137 Wn.2d 904, 909, 976 P.2d 624 (1999)). Evidence that might impact a defendant's assessment of the danger presented, like the victim's prior specific violent acts, is admissible only if known to the defendant when the incident occurred. *See State v. Duarte Vela*, 200 Wn. App. 306, 326, 402 P.3d 281 (2017). If the defendant meets the burden of offering some evidence in support of self-defense, the burden shifts to the State "to prove the absence of self-defense beyond a reasonable doubt." *Grott*, 195 Wn.2d at 266.

C.      Constitutional Error Analysis

Jennings argues that the trial court's exclusion of the toxicology report violated his constitutional right to present a defense because the evidence was central to establishing the reasonableness of his argument that the killing was justified. We disagree.

In analyzing the Sixth Amendment right to present a defense, we balance the State's interest in excluding the toxicology report against Jennings's need for evidence showing that his subjective fear was reasonable. *See Arndt*, 194 Wn.2d at 812. In *Arndt*, the Supreme Court held that the trial court did not violate the defendant's Sixth Amendment rights because the evidentiary ruling limited testimony but did not eliminate Arndt's entire defense. *Id.* at 814. The court distinguished Arndt's situation from that in *State v. Jones*, where "the trial court interpreted a rape shield law to preclude the defendant from presenting any evidence that the victim had voluntarily engaged in an 'all-night[] drug-induced sex party.'" *Id.* at 812-13 (quoting *State v. Jones*, 168 Wn.2d 713, 721, 230 P.3d 576 (2010)). The evidence at issue in *Jones* "was 'evidence of extremely

high probative value; it [was] Jones's entire defense.'" *Id.* at 813 (quoting *Jones*, 168 Wn.2d at 721). In contrast, Arndt was still permitted to present evidence that pointed to an alternative cause for the fire she was accused of starting. *Id.* at 813-14.

In some cases, evidence is of such high probative value that "'no state interest [is] compelling enough to preclude its introduction consistent with the Sixth Amendment and [Washington Constitution, article I, section 22].'" *Id.* at 812 (quoting *State v. Hudlow*, 99 Wn.2d 1, 16, 659 P.2d 514 (1983)). In *Duarte Vela*, a self-defense case, Division Three held that the trial court violated the defendant's constitutional right to present a defense when it excluded evidence of the victim's threat to kill the defendant's family. 200 Wn. App. at 320. The threat was extremely probative because the defendant knew about it. *Id.* at 311, 320-21. The excluded testimony was necessary to establish the source and reasonableness of the defendant's subjective fear. *See id.* at 313, 320, 323-24. Without it, the defendant could not have fully testified to his version of events. *Id.* at 320.

In this case, the toxicology report did not have "extremely high" probative value and it did not constitute Jennings's "entire defense." *Jones*, 168 Wn.2d at 721. At trial, Jennings testified that what he observed on the day of the shooting gave rise to his subjective fear. And unlike in *Duarte Vela*, the excluded evidence here may have been corroborative, but it did not prevent Jennings from testifying about the basis for his subjective fear—his belief that Burton was high on methamphetamine.

Jennings explained how his belief that Burton had used methamphetamine contributed to his subjective fear of Burton. Jennings testified that he had observed people who were high on methamphetamine before. He identified signs such as "rash movements, . . . aggressiveness, . . .

sweating[,] and . . . eyes . . . being dilated." VRP (June 11, 2018) at 1297. Based on that knowledge, Jennings testified that Burton "appeared . . . high on methamphetamine[]." *Id.* Jennings also testified that his fear of Burton was intensified by his belief that Burton would act violently as a result.

In closing, defense counsel highlighted Jennings's testimony about his belief that Burton was high on methamphetamine. Counsel asked the jury to "stand . . . in the shoes of Justin Jennings," and recognize that Jennings believed that "Burton was on methamphetamine and that he was amped up." VRP (June 13, 2018) at 1508-09. He argued that the jury could reasonably infer that Jennings feared for his life because he believed Burton was "amped up" on methamphetamine, based on Jennings's life experiences, observations of Burton's behavior that day, and the "uncontroverted" testimony of other witnesses that "Mr. Burton aggressively approached [Redman], a man he knew to be armed." *Id.* at 1509. Even though the toxicology evidence had not been admitted, the admitted evidence allowed Jennings's counsel to argue that Jennings perceived Burton to be "amped up on meth" and believed he was "dangerous." *Id.*

We hold that the exclusion of the toxicology evidence did not violate Jennings's constitutional right to present a defense.

D.    Evidentiary Error Analysis

We turn next to whether the trial court abused its discretion under ER 401 and 402 when it excluded the toxicology report and whether any such error was harmless. Here, even if the trial court abused its discretion by excluding the toxicology report as irrelevant, an issue we do not decide, we hold that any error was harmless under the nonconstitutional harmless error test.

The nonconstitutional harmless error test requires the defendant to show a reasonable probability that the error materially affected the outcome of the trial. *Barry*, 183 Wn.2d at 317-18. As discussed above, Jennings testified that at the time of the shooting, he believed Burton was high on methamphetamine. Jennings's counsel emphasized Jennings's subjective fear, informed by his perception that Burton was high on methamphetamine.

In addition, Duane testified that Burton was wiping his eyes with both hands when Jennings shot him. Duane also testified that Jennings looked at him immediately after shooting Burton and said, "I got you, dog," before running out the door. VRP (June 7, 2018) at 990.

Jennings has not shown that there was a reasonable probability that any additional corroboration from the toxicology report would have materially changed the result at trial. *See Barry*, 183 Wn.2d at 317-18. We hold that even if the trial court abused its discretion by excluding the toxicology report under ER 401 and 402, this ruling was harmless error.

## II. SUFFICIENCY OF THE EVIDENCE

Jennings argues that the evidence was not sufficient to prove beyond a reasonable doubt that he committed second degree felony murder under RCW 9A.32.050(1)(b). We disagree and hold that a rational jury could have found that Jennings shot Burton in the course of and in furtherance of the bear spray assault.

A.      Second Degree Felony Murder

Under RCW 9A.32.050(1)(b), a defendant can be convicted of second degree felony murder if the State proves that they "commit[ted] . . . any felony, including assault, other than those enumerated in RCW 9A.32.030(1)(c), and, in the course of and in furtherance of such crime

or in immediate flight therefrom . . . cause[d] the death of a person other than one of the participants."

To prove felony murder, "there must be an 'intimate connection' between the killing and the felony." *State v. Brown*, 132 Wn.2d 529, 608, 940 P.2d 546 (1997) (quoting *State v. Golladay*, 78 Wn.2d 121, 132, 470 P.2d 191 (1970), *overruled on other grounds by State v. Arndt*, 87 Wn.2d 374, 378, 553 P.2d 1328 (1976)). We avoid "apply[ing] too literal an interpretation" of the in furtherance requirement. *Id.* at 610. Rather, we assess whether the killing was close in time and distance to the underlying felony. *Id.* at 608.

To prove that a killing constituted second degree felony murder under RCW 9A.32.050(1)(b), "the State must prove 'that the death was a probable consequence of the felony,'" and "'that the felony began before the killing.'" *State v. Song Wang*, 5 Wn. App. 2d 12, 19, 424 P.3d 1251 (2018) (quoting *State v. Irby*, 187 Wn. App. 183, 201, 347 P.3d 1103 (2015)), *review denied*, 192 Wn.2d 1012 (2019).

B.     Sufficiency of the Evidence

"The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We draw all reasonable inferences in favor of the State and assume the truth of the State's evidence. *Id.* "Credibility determinations are for the trier of fact and cannot be reviewed on appeal." *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

C.      Jennings's Conviction for Felony Murder

The to convict instruction for second degree felony murder under RCW 9A.32.050(1)(b) required the State to prove the underlying felony of second degree assault (the bear spray attack) and that Jennings caused Burton's death "in the course of and in furtherance of" the assault "or in immediate flight" from it.[3] Clerk's Papers at 102.

Jennings argues that he did not shoot Burton "in furtherance of the bear mace assault," because the assault with the bear spray was "complete" prior to the shooting. Br. of Appellant at 24. Viewing the evidence in the light most favorable to the State, the jury could have found beyond a reasonable doubt that Jennings shot Burton in the course of the assault because Jennings sprayed the bear spray and then shot Burton only seconds later. The evidence was also sufficient for the jury to find that the shooting occurred in furtherance of the assault. The jury could reasonably conclude that a deadly shooting was a probable consequence of spraying bear spray on people who were acting aggressively, appeared high on methamphetamine, and had access to a weapon. In fact, Jennings acknowledged that the situation had the potential to turn violent and that his conduct increased the likelihood that violence would occur. Based on this testimony, the jury could reasonably have concluded that the fatal shooting was a probable consequence of deploying the bear spray because doing so was likely to provoke and escalate Burton.

To the extent Jennings argues that the bear spray attack was complete before the shooting, and so the shooting could not have been in furtherance of the assault, we disagree. In interpreting

---

[3] Jennings does not dispute that he committed the underlying second degree assault when he sprayed Burton with bear spray. The State was also required to prove that Burton was not a participant in the crime and that the events took place in Washington. Jennings also does not challenge the sufficiency of the evidence regarding these elements.

RCW 9A.32.050(1)(b), we do not take a literal view of the in furtherance requirement, and instead ask more simply whether the murder was a probable consequence of the underlying felony. *See Brown*, 132 Wn.2d at 610; *see also Song Wang*, 5 Wn. App. 2d at 19.

We affirm Jennings's second degree felony murder conviction.

## III. WITNESS COMMENT ON GUILT

Jennings argues that the trial court abused its discretion by refusing to strike Tongedahl's comment on Jennings's guilt, violating his constitutional right to trial by jury. We disagree.

The comment occurred when Tongedahl, Burton's friend, blurted out during the defense's cross-examination that he "watched [his] closest friend get murdered." VRP (June 6, 2018) at 874. Both the defense and the State moved to strike. The trial court denied both motions and the defense continued with its cross-examination.

A.      Opinion on Ultimate Issue

Under Washington law, "[s]ome areas . . . are clearly inappropriate for opinion testimony in criminal trials." *State v. Quaale*, 182 Wn.2d 191, 200, 340 P.3d 213 (2014) (citing *State v. Montgomery*, 163 Wn.2d 577, 591, 183 P.3d 267 (2008)). A witness may not express "personal opinions, particularly expressions of personal belief, as to the defendant's guilt." *Id.* Impermissible opinion testimony about the defendant's guilt "violates the defendant's constitutional right to a jury trial, which includes the independent determination of the facts by the jury." *Id.* at 199. The admission of improper opinion testimony is reversible error unless it is harmless under the

constitutional harmless error standard. *Id.* at 202*; see also City of Seattle v. Levesque*, 12 Wn. App. 2d 687, 708, 460 P.3d 205, *review denied*, 195 Wn.2d 1031 (2020).[4]

B.      Harmless Error

Even if the trial court's failure to strike the comment was error, an issue we do not decide, any error was harmless. We consider a constitutional error harmless if we are "'convinced beyond a reasonable doubt that any reasonable trier of fact would have reached the same result despite the error.'" *State v. Scherf*, 192 Wn.2d 350, 370, 429 P.3d 776 (2018) (quoting *State v. Thompson*, 151 Wn.2d 793, 808, 92 P.3d 228 (2004)). To make this determination, we consider whether "the untainted evidence is so overwhelming that it necessarily leads to a finding of guilt." *State v. Guloy*, 104 Wn.2d 412, 426, 705 P.2d 1182 (1985); *see also Scherf*, 192 Wn.2d at 371.

The State bears the burden of overcoming the presumption that the constitutional error was prejudicial. *State v. Nysta*, 168 Wn. App. 30, 43, 275 P.3d 1162 (2012). The Supreme Court recently elaborated that "this inquiry requires us to find the error harmless if, in light of the entire trial record, we are convinced that the [fact finder] would have reached the same verdict absent the error." *State v. Romero-Ochoa*, 193 Wn.2d 341, 348, 440 P.3d 994 (2019), *petition for cert. filed* (Wash. May 29, 2020) (No. 20-5114). Under this test, we look to the "overall significance of the

---

[4] The State claims that Jennings failed to preserve his challenge to Tongedahl's testimony with a specific objection. But ER 103(a)(1) only mandates that "the specific ground of [the] objection" be stated "if . . . not apparent from the context." Here, it was apparent from context that both Jennings and the State moved to strike because Tongedahl's statement appeared to be an opinion on Jennings's guilt. Jennings's objection to Tongedahl's testimony was thus properly raised during trial under ER 103(a)(1).

erroneously admitted or excluded evidence in this context (e.g., whether it was cumulative or corroborated, or consistent with the defense theory)." *Id*.

We conclude that the result of the trial would not have changed even if the statement had been stricken. One of the witnesses for the State, Duane, testified that Burton was wiping his eyes with both hands when Jennings shot him. Duane also testified that immediately after shooting Burton, Jennings looked at him and said, "I got you, dog," before leaving out the back door. VRP (June 7, 2018) at 990. The State also presented evidence that Jennings was the initial aggressor because Jennings sprayed Burton with bear spray. Thus, the jury did not have to rely on Tongedahl's assessment to conclude Jennings did not act in self-defense.

Tongedahl blurted the comment out in an emotional outburst and clearly identified himself as Burton's "closest friend," which makes the comment less prejudicial than if it had been made by an impartial observer or by a police officer. VRP (June 6, 2018) at 874. In addition, Jennings's counsel actually reiterated Tongedahl's comment twice in his subsequent cross-examination questions, attempting to use his comment to his advantage to suggest that Tongedahl's anger and emotional response to seeing his best friend shot colored his memory of the events.

Finally, the State never again mentioned Tongedahl's comment in redirect examination or in closing argument. In fact, on two subsequent redirect examination questions, the State carefully changed its wording to use the phrase "your closest friend had been killed," VRP (June 6, 2018) at 875, and "after your best friend was killed," VRP (June 6, 2018) at 880. The State did, by contrast, refer in closing to Duane's more specific and impactful testimony that he saw Burton wiping his eyes with both hands immediately before Jennings shot him.

We hold that even if the trial court erred by excluding Tongedahl's testimony, that error was harmless beyond a reasonable doubt because the fleeting statement was minor in light of the other evidence that was sufficient for the jury to convict Jennings of second degree felony murder.

## IV. LEGAL FINANCIAL OBLIGATIONS

Jennings argues that the $200 filing fee and $100 DNA collection fee in his judgment and sentence must be stricken because he was indigent and RCW 10.01.160(3) prohibits the imposition of the filing fee on indigent defendants. Jennings also argues that the DNA collection fee was improper because he had prior felony convictions and his DNA was already collected.

Under RCW 36.18.020(2)(h), courts may not impose the $200 criminal filing fee on indigent defendants. *See also State v. Ramirez*, 191 Wn.2d 732, 746, 462 P.3d 714 (2018). Under RCW 43.43.7541, the $100 DNA collection fee is not mandatory if the defendant's DNA has already been collected due to a prior conviction. *See also id.* at 747. Jennings was indigent, and the State concedes that the filing fee should be stricken. Jennings also had past felony convictions, so his DNA was likely already collected. The State concedes that this fee should also be stricken.

We accept the State's concessions and remand for the trial court to strike the $200 filing fee and $100 DNA collection fee from Jennings's judgment and sentence.

CONCLUSION

We affirm Jennings's conviction and remand for the trial court to strike the filing fee and

DNA collection fee from Jennings's judgment and sentence.

Glasgow, J.

I concur:

, C.J.

Lee, C.J.

MELNICK, J. (concurrence)—I respectfully concur with the majority's result; however, I write separately because of my disagreement with its analysis on the evidentiary issue.

Justin Jennings claimed self-defense to homicide charges and sought to admit a toxicology report that showed the victim had methamphetamine in his system at the time of his death. Jennings argued this evidence corroborated his belief that the victim was intoxicated from methamphetamine. He further argued this evidence was relevant to the issue of the reasonableness of Jennings' fear. Jennings wanted to use the evidence to show the victim was, in fact, high on methamphetamine at the time of his death. The court excluded the proffered evidence.

Jennings argues the exclusion of the evidence violated his constitutional right to present a defense. But in essence, we are reviewing a trial court's evidentiary ruling. "The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988). A defendant's right to present a defense is subject to "established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973); *State v. Cayetano-Jaimes*, 190 Wn. App. 286, 296, 359 P.3d 919 (2015).

Pursuant to *State v. Arndt*, 194 Wn.2d 784, 453 P.3d 696 (2019), and *State v. Clark*, 187 Wn.2d 641, 389 P.3d 462 (2017), we review constitutional challenges to evidentiary rulings utilizing a two-step process. We first review the evidentiary ruling under an abuse of discretion standard. We then review the constitutional question of whether the court violated the defendant's right to present a defense. *Arndt*, 194 Wn.2d at 798; *Clark*, 187 Wn.2d at 648-49. "If the court

19

excluded relevant defense evidence, we determine as a matter of law whether the exclusion violated the constitutional right to present a defense." *Clark*, 187 Wn.2d at 648-49.[5]

The order in which we apply this test is important. There are three possible scenarios. If the trial court abused its discretion in making an evidentiary ruing, and the ruling was prejudicial to the defendant, we would avoid the constitutional issue altogether.[6] On the other hand, if the abuse of discretion constituted harmless error, we would address the constitutional standard. Lastly, if the trial court did not abuse its discretion, then we would review the constitutional issue. However, my research has not revealed one case in Washington where the appellate court explicitly concluded that the trial court did not abuse its discretion by excluding evidence proffered by the defense or by limiting a defendant's cross-examination, and then went on to conclude that a constitutional violation occurred.[7]

This analysis is in keeping with the development of the jurisprudence in this area. As to the right to a fair trial, "[a]llegations that a ruling violated the defendant's right to a fair trial does

---

[5] This portion of the test is based on an assumption that the evidence was excluded based on relevance; however, evidence may be excluded for any number of reasons. I do not know how to apply this portion of the test if the court had excluded the relevant evidence based on incompetent evidence, privileged evidence, or otherwise inadmissible evidence under standard rules of evidence or statutes. *Taylor*, 484 U.S. at 410. As an example, an incompetent witness would not be permitted to testify even if the witness had relevant defense evidence. Likewise, a witness asserting a valid privilege could not be compelled to testify even if the witness had relevant defense evidence. *See* chapter 5.60 RCW. Additionally, clear hearsay evidence is inadmissible even if it is relevant to a defense. *See* ER 802. It would seem to me that these examples of excluded evidence would not constitute a constitutional violation of a defendant's right to present a defense.

[6] We should refrain from deciding a case on constitutional grounds unless it is absolutely necessary. *Isla Verde Int'l Holdings, Inc. v. City of Camas*, 146 Wn.2d 740, 752, 49 P.3d 867 (2002), *abrogated on other grounds by Yim v. City of Seattle*, 194 Wn.2d 682, 451 P.3d 694 (2019).

[7] This research is consistent with my prior research which resulted in *State v. Blair*, 3 Wn. App. 2d 353, 415 P.3d 1232 (2018).

not change the standard of review." *State v. Dye*, 178 Wn.2d 541, 548, 309 P.3d 1192 (2013). Assessing the constitutional question first shifts the emphasis from an evidentiary ruling to a constitutional claim. It changes the focus from where it should be.

I can imagine situations where the excluded evidence would seem to violate a defendant's constitutional rights; however, based on well-recognized rules of evidence, the court clearly and properly excluded inadmissible evidence. Hypothetically, assume that the only evidence of a defendant's alibi defense is hearsay evidence that the defendant was at a different location other than the crime scene. Excluding this evidence would probably violate a defendant's right to present a defense because it would completely gut the defendant's defense. It would prejudice the defendant. The hearsay evidence is clearly relevant evidence. However, because all of the proffered evidence would be inadmissible under Washington's Rules of Evidence, there would be no abuse of discretion in excluding it. In that scenario, analyzing the constitutional prong first would result in a miscarriage of justice.

In the present case, the trial court did not abuse its discretion by excluding the toxicology report. It was clearly irrelevant. The fact that the victim had methamphetamine in his system at the time of death does not mean he was under the influence of or feeling the effects of methamphetamine at the time of the assault.[8] The court did not abuse its discretion by excluding this evidence. In addition, the trial court did not prohibit Jennings from presenting a defense. The

---

[8] "Results only show that amphetamine was in your system at the time of the test." https://www.urmc.rochester.edu/encyclopedia/content.aspx?contenttypeid=167&contentid=amph etamine_urine_screen and https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2709797/ provide a more comprehensive review of this subject.

jury heard evidence that the victim was under the influence of methamphetamine at the time of the incident.

For the preceding reasons, I respectfully concur in the majority's result.

_____
Melnick, J.