

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37142-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LOUIS EARL SYKES, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Louis Sykes appeals his conviction for second degree burglary.

He identifies two arguable errors made by the trial court, both harmless. We affirm.

FACTS AND PROCEDURAL BACKGROUND

One morning in late April 2019, Judith Jones saw Louis Sykes and two other men

carrying boxes of items from a building at 1427 Meade Avenue in Prosser. The Meade

Avenue property is owned by Bob Nelson and his wife, Ms. Jones's sometime-neighbors. Ms. Jones oversees some property matters for Mr. Nelson.

Three buildings are located on Mr. Nelson's property. Ms. Jones describes the front building as a rental house, the middle building as the house where Mr. Nelson stays when he's in Prosser (Mr. Nelson refers to it as a photography building), and the third building as a large garage. As Ms. Jones watched, Mr. Sykes and the two other men carried boxes out of the middle building and placed them in the back seat of a Honda Accord. She recognized Mr. Sykes, but not the others.

She watched the men for about 15 minutes. When they drove off, she had a neighbor call police.

Officers responding to the report of a suspected burglary pulled over a green Honda Accord that matched the description and license plate number provided by dispatch. Mr. Sykes was driving the car. His passengers were Stone Stafford and Josh Blakely. The car was full of items. According to an officer who spoke with Mr. Sykes, he claimed he had gone to the Meade Avenue location to pick up plumbing fittings. He claimed he picked them up from outside the buildings about 10 feet from a dumpster.

Later that day, Ms. Jones looked around Mr. Nelson's property. While she did not go into the buildings, she could see that most of the items that had been in the garage had been moved into the middle building. The garage was normally locked, but the lock had

been broken. The middle building was also normally locked, but on April 27 it had been broken into using a screwdriver.

She traveled to the police station the next day to see if she could identify items found in the car Mr. Sykes was driving. She identified most of the items as belonging to Mr. Nelson and having been taken from his garage.

Mr. Nelson visited the garage about a week later. It appeared to him that anything saleable appeared to have been moved from the garage to the photography building. He claimed that only he and Ms. Jones had keys to the buildings on his property. He did not know Mr. Sykes, and had never given him permission to enter the buildings.

The State charged Mr. Sykes with second degree burglary.

At Mr. Sykes's three-day jury trial, the State presented testimony from Ms. Jones, Mr. Nelson, and three police officers. They testified consistent with the facts set forth above.

Mr. Sykes represented himself and called as witnesses his friends Frank Misuraca and Stone Stafford. Mr. Sykes questioned Mr. Misuraca about whether he ever lived at the Nelson property or called it a "crash pad." Report of Proceedings (RP) at 327. Mr. Misuraca testified he and his girlfriend formerly used a building at 1427 Meade Avenue as "a little party place" because the property was for sale and the door was unlocked. *Id.* Mr. Misuraca testified he had not been back since he and his girlfriend were arrested for trespassing there in November 2018.

3

When Mr. Sykes called Mr. Stafford as a witness, he asked Mr. Stafford whether he (Mr. Sykes) ever entered Mr. Nelson's building on the day of the alleged burglary. Mr. Stafford answered, "I really love you, buddy, but I have to plead the Fifth, bro." RP at 334.

Standby counsel questioned Mr. Sykes when he testified on his own behalf. Mr. Sykes testified that on the morning of the alleged burglary, he borrowed his friend Tom's car, planning to go to the hardware store to buy plumbing fittings to repair his kitchen sink. He took Mr. Stone and Mr. Blakely along and learned from them that it would be possible to stop at someone's house and get the fittings he needed. He testified that the men were only at the Meade Avenue property for a couple of minutes and he never went inside. He testified he believed they had permission to be there.

Mr. Sykes provided the following testimony when questioned by stand-by counsel about how he came to be at 1427 Meade Avenue:

> Q. So, there is you, there is Mr. Stafford, and Mr. Blakely.
> Is it—does everybody get into the car—
> A. Yeah.
> Q. —to go to the hardware store?
> A. Yep.
> Q. Okay.
> A. We were headed to—well, actually, as we're getting in the car, Stone Stafford told me, "Hey, let's stop by my place."
> [PROSECUTOR]: Objection, hearsay.
> THE COURT: Sustained.

4

BY [STANDBY COUNSEL]:

Q. Mr. Sykes, without referring or saying what anybody else said—

A. Oh.

Q. —when you and Mr. Stafford and Mr. Blakely are heading to the hardware store, is that what your objective was? That's where you were going?

A. Yes.

Q. I see.

A. To the hardware store. I—I—I was informed that if I stopped by somebody's house I could pick up the stuff that—that he had there.

Q. Okay, and what—what place was this other place that you stopped at instead?

A. The—the place was 1427 Meade Avenue where—where this situation occurred.

RP at 341-42.

At the conclusion of the evidence, and after excusing the jury for the day, the trial court provided the parties with its jury instructions and gave them the opportunity to state their objections or exceptions. Mr. Sykes raised none.

The next morning, while reading the instructions to the jury, the trial court stopped short at instruction 6 and questioned the parties about its opening sentence. The instruction begins, "To convict the defendant *or an accomplice* of the crime of Burglary in the Second Degree . . . ." Clerk's Papers (CP) at 22 (emphasis added). Interrupting its reading and addressing the parties, the court asked:

THE COURT: . . . Instruction Number Six:
To convict the defendant—

5

Read that, please.  The first sentence of Instruction Number Six.

Do you see the problem?

[PROSECUTOR:]  Your Honor, that's approved language.  I checked the WPICs[1] before I put that in there.

THE COURT:  Mr. Sykes?

. . . .

THE DEFENDANT:  I don't feel that the word accomplice should be in there.  I feel that the sentence should be, "To convict the defendant of the crime of burglary."  I feel like the word "accomplice" is—should not be in that.

THE COURT:  I looked at—it matches up with Jury Instruction Number Seventeen.  So, I think it's okay.

RP at 398-99.

The jury found Mr. Sykes guilty, on a verdict form that reads:

We, the jury in the above entitled cause, find the Defendant ___*Guilty*___
(Guilty or Not Guilty)

of the crime of Burglary in the Second Degree, as charged in the Information.

Dated this _9th_ day of _October_, _2019_.

CP at 37.  The court imposed a two-month sentence.  Mr. Sykes appeals.

ANALYSIS

Represented by counsel, Mr. Sykes assigns error on appeal to (1) the giving of instruction 6, which he contends misstates the law in violation of due process, and (2) the

---

[1] Washington Pattern Jury Instructions: Criminal.

trial court's ruling sustaining the State's hearsay objection to Mr. Sykes's testimony that Stone Stafford said to him, "Hey, let's stop by my place."

I.   THE ERROR IN INSTRUCTION 6 WAS HARMLESS, GIVEN THE LANGUAGE OF THE VERDICT FORM

Mr. Sykes argues that the nonpattern introductory language of jury instruction six—"To convict the defendant *or an accomplice* of the crime of Burglary in the Second Degree . . ."—allowed the jury to return a guilty verdict if it found Mr. Stafford and Mr. Blakely committed burglary.

We review a challenge to the language of a jury instruction de novo, in the context of the instructions as a whole. *State v. Bennett*, 161 Wn.2d 303, 307, 165 P.3d 1241 (2007); *In re Pers. Restraint of Hegney*, 138 Wn. App. 511, 521, 158 P.3d 1193 (2007). Jury instructions are upheld on appeal if they allow the parties to argue their theories of the case, do not mislead the jury, and properly inform the jury of the applicable law. *Bennett*, 161 Wn.2d at 307.

Instruction 6 reads:

> To convict the defendant or an accomplice of the crime of Burglary in the Second Degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about April 27, 2019, the defendant or an accomplice entered or remained unlawfully in a building;
> (2) That the entering or remaining was with intent to commit a crime against a person or property therein; and
> (3) That this act occurred in Benton County, Washington.

CP at 22.

The nonpattern introductory language is anomalous. But it cannot be read, as Mr. Sykes argues, to "permit[ ] the jury to find Sykes, the defendant, guilty if it found Stafford and Blakely committed the burglary, even if Sykes himself did not commit the crime either as a principal or an accomplice." Br. of Appellant at 9. Rather, it would permit the jury to find *Stafford and/or Blakely* guilty, in Mr. Sykes's trial, if the elements were proved beyond a reasonable doubt. Unsurprisingly, the jury was not given verdict forms asking if it had found Stafford or Blakely guilty. The only verdict form given to the jury required it to state whether it found Mr. Sykes guilty or not guilty. Its verdict finding that Mr. Sykes was guilty is clear. While the instruction was flawed, it could not and did not permit the jury to find Mr. Sykes guilty for Mr. Stafford's or Mr. Blakely's wrongdoing.

II.     ANY PRESERVED ERROR IN THE TRIAL COURT'S HEARSAY RULING WAS HARMLESS

Mr. Sykes next argues that the trial court erred when it sustained the State's hearsay objection to his testimony that Mr. Stafford said, "Hey, let's stop by my place." RP at 341. He argues that it was an error of constitutional dimension because the exclusion of the evidence deprived him of his right under the Sixth Amendment to the United States Constitution to present a defense.

Where a claim of excluding evidence in error is raised under the evidence rules, we review for abuse of discretion. *State v. Orn*, ___ Wn.2d ___, 482 P.3d 913, 919

(2021). We review de novo whether the trial court's evidentiary rulings abridged a defendant's Sixth Amendment rights. *Id.*

Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted. ER 801(c). On appeal, Mr. Sykes characterizes Mr. Stafford's statement as a request, which he argues is not an assertion and therefore not hearsay, citing *State v. Fish*, 99 Wn. App. 86, 95, 992 P.2d 505 (1999) (a request to "pull over and drop them off" was not an assertion of fact, but a command). More importantly, because it explains the relevance of Mr. Stafford's alleged statement, "a statement is not hearsay if it is used only to show the effect on the listener, without regard to the truth of the statement." *State v. Edwards*, 131 Wn. App. 611, 614, 128 P.3d 631 (2006). Mr. Sykes's testimony was presumably offered for the purpose of showing that the statement led him to believe that Mr. Stafford was living at 1427 Meade Avenue. Neither of these explanations for the nonhearsay character of the reported statement was offered in the trial court. *Cf. United States v. Leonard-Allen*, 739 F.3d 948, 954 (7th Cir. 2013) (the requirement that a party objecting to the exclusion of evidence under Federal Rule of Evidence (FRE) 103(a)(2)[2] inform the court of its substance is met by informing court that testimony was not offered for the truth of the matter asserted). *Accord United States v. Barbee*, 968 F.2d 1026,

---

[2] Similar to FRE 103(a)(2), ER 103(a)(2) provides that error may not be predicated on a ruling that excludes evidence unless a substantial right of the party is affected and "the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked."

1031 (10th Cir. 1992) (where defendant acquiesced in trial court's ruling sustaining a hearsay objection, an argument that the evidence was offered to show state of mind, not truth, was waived).

Setting aside whether Mr. Sykes or standby counsel should have identified a basis for the reported statement's admissibility, we find that any error by the trial court in sustaining the objection was harmless. Whether an erroneous exclusion of evidence is harmless is reviewed under the nonconstitutional error test where the evidence rules are misapplied, and under the constitutional harmless error test where the exclusion deprives a defendant of his right to present a defense. *State v. Jennings*, 14 Wn. App. 2d 779, 788-89, 474 P.3d 599 (2020). Even "constitutional errors . . . may be so insignificant as to be harmless." *State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985). A constitutional error is harmless if the reviewing court is convinced beyond a reasonable doubt that the same result would have been reached in the absence of the error. *State v. Deal*, 128 Wn.2d 693, 703, 911 P.2d 996 (1996).

While the prosecutor objected to Mr. Sykes's testimony about Mr. Stafford's statement, its objection came after Mr. Sykes had already repeated the statement. The prosecutor did not move to strike it, so it remained in the record. *See State v. Swan*, 114 Wn.2d 613, 658, 790 P.2d 610 (1990) (absent a motion to strike testimony that precedes an objection, it remains in the record for the jury's consideration).

In Mr. Sykes's opening statement to the jury, he previewed evidence that his friend came by on the morning of the alleged burglary and offered plumbing fittings. Mr. Sykes told the jurors:

> And he said, "Hey, I have some plumbing fittings over at my house. Maybe instead of going to the hardware store we can just stop and get 'em," and I said, "Well, I'm in a big hurry on this." He said, "No. It's just right there in the alley by—by Food Depot," which is the grocery store in Prosser.

RP at 114. There was no objection.

In closing argument, Mr. Sykes talked to the jurors about driving to the Meade Avenue property. He told them:

> Anyway, this is the way I drove in there. When Stone said he lived there, he said, "Turn in the alley right here." So, I went in and—and pulled in.

RP at 422. There was no objection. Mr. Sykes continued, shortly thereafter:

> [M]y point to that is my intentions for the day were not criminal. They—I intended to finish the plumbing. So, I intended to go to the—to the hardware store and get plumbing fittings. This kid came over with a bunny rabbit—bunny rabbit head on from Easter and—Stone Stafford, and I invited him to go along.
> He said, "I got some plumbing fittings at my place." We stopped there to get 'em, and we were there like—I know we weren't even there for two minutes.

RP at 424. There was no objection.

The evidence that Mr. Sykes argues was necessary to his defense was presented and argued. If the trial court erred, it was harmless under even the constitutional harmless error standard.

11

No. 37142-5-III
*State v. Sykes*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Pennell, C.J.

_____
Lawrence-Berrey, J.