**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54096-7-II |
| Respondent, | |
| v. | |
| AARON EARL LAGRAVE, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, A.C.J.—After an argument, Aaron Earl Lagrave hit Theodore Tetreault, causing Tetreault to lose consciousness and suffer a dislocated jaw and broken collarbone. A jury found Lagrave guilty of second degree assault.

Lagrave appeals his assault conviction, arguing the trial court erred by excluding evidence that the victim used methamphetamine daily. Tetreault testified that he used methamphetamine that morning, but not that he was a regular user. According to Lagrave, Tetreault's regular methamphetamine use would have corroborated testimony that Tetreault was the first aggressor.

We decline to review the asserted error because the parties agreed Tetreault could testify he had used methamphetamine that morning, but Lagrave never offered evidence at trial that Tetreault used methamphetamine daily, and the trial court never issued a ruling excluding such evidence. Because the issue was not preserved below, Lagrave must show a manifest error affecting a constitutional right, and he fails to do so.

Lagrave also appeals his sentence. In calculating Lagrave's offender score, the trial court included a conviction for possession of a controlled substance. The State concedes that Lagrave must be resentenced as a result of *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021).

We affirm Lagrave's conviction but remand for the trial court to recalculate Lagrave's offender score and resentence him in light of *Blake*.

FACTS

Early one morning, Lagrave and his girlfriend, Kimberlee Hunt, went to Tetreault's trailer and demanded items that Hunt had left there, including a bow and arrows that belonged to Lagrave. An argument between Lagrave and Tetreault escalated, and Lagrave hit Tetreault, either with a car door or his fist. Tetreault fell to the ground and was unconscious and seizing for about 10 minutes. Tetreault suffered a broken collarbone and a dislocated jaw, and his memory remains impaired.

The State charged Lagrave with second degree assault in violation of RCW 9A.36.021(1)(a), alleging that he intentionally assaulted Tetreault and recklessly inflicted substantial bodily harm. The State later added a charge of witness tampering based on a call that Lagrave made to Hunt from the Thurston County Jail. Lagrave does not appeal his conviction for witness tampering.

At trial, Lagrave's defense was that he assaulted Tetreault to protect Hunt and Tetreault was the first aggressor. In support of this defense, Lagrave sought to present evidence that Tetreault was under the influence of methamphetamine at the time of the assault and that this caused Tetreault to act aggressively. The only dispute on appeal is whether the trial court excluded evidence that Tetreault used methamphetamine daily and, if so, whether that ruling was improper.

I. MOTION IN LIMINE

Before trial, the State filed a motion in limine, explaining, "The defense has advised that they intend to question Mr. Tetreault on the frequency with which he uses methamphetamine . . . and then may seek to impeach Mr. Tetreault . . . if and when Mr. Tetreault denies that use being

2

'seven times a week' as written in the report by hospital staff." Suppl. Clerk's Papers (SCP) at 93. The State moved for "an order prohibiting this line of questioning and any argument making this suggestion," arguing that the frequency of Tetreault's drug use was irrelevant and was inadmissible character evidence under ER 404. *Id.* The State further argued that even if the evidence were relevant, its probative value was substantially outweighed by the danger of unfair prejudice and, therefore, its admission was barred by ER 403. The State conceded, however, that Tetreault's "drug use *around the time of the offense* and the effect [of it] on Mr. Tetreault's memory and perception of the incident [were] proper topics for questioning." *Id.* (emphasis added).

In Lagrave's written response to the State's motion in limine, he explained, "[T]he defense's position is that the alleged victim possibly being under the influence of methamphetamine *at the time* might affect not only his memory and perception of the incident, but is very much relevant to the question of who the first aggressor was." SCP at 98 (emphasis added). Lagrave indicated his belief that testimony on "methamphetamine's primary property as a stimulant, how long its effects typically last once ingested (depending on the mode of ingestion), and how it can affect a user's behavior toward other people" would be relevant evidence and requested that he "be allowed to solicit testimony from the State's law enforcement witnesses about the typical effects of methamphetamine on users." *Id.*

In discussing the motion before the trial court, the State noted that the parties were "essentially on the same page that [Tetreault's] use [of methamphetamine] that morning is relevant and is a topic that should be explored." 1 Verbatim Report of Proceedings (VRP) at 10. "[W]ith regard to any testimony from the deputies," the State advised that it would "wait and see . . . whether at that point in the trial the evidence is relevant or . . . there's a foundation or personal

knowledge" and stated that it did not have "any issues with the idea that that would be explored through the witnesses." *Id.* Lagrave did not add anything to the State's summary of the parties' positions. *Id.*

The trial court noted, "There is a well-established line of case law that stands for the proposition that expert testimony is necessary . . . prior to the jury hearing evidence with respect to how methamphetamine affects a person," and cautioned that "it [is] error to simply argue that because a person ingested methamphetamine he or she acted in a particular way." 1 VRP at 10-11. However, the trial court did not expressly rule or otherwise limit the evidence that Lagrave could offer, stating that it "doesn't appear that that's really an issue at this particular point." 1 VRP at 11. The State agreed that prior to the admission of any evidence on the effects of Tetreault's methamphetamine use, it would want to consider questions of relevance, foundation, and witness expertise, but it did not object to Tetreault testifying "about how he was feeling and whether he felt under the influence, how much he used, [and] things of that nature." *Id.* The trial court responded, "Okay." *Id.*

## II. TRIAL

### A. Testimony About the Assault

Tetreault admitted that he "smoked a little narcotics" on the morning of the assault. 1 VRP at 168. He testified that he smoked around 3:00 a.m. but claimed that he was not under the influence when Lagrave arrived around 6:20 a.m. On cross-examination, Tetreault clarified that the substance he smoked was "[a] little bit" of methamphetamine. 1 VRP at 186.

Tetreault also testified that Lagrave had come over to the property several times in the preceding weeks, often at inappropriate times, such as early in the morning, and that Lagrave had

been acting "more aggressive." 1 VRP at 163. On the morning of the assault, Lagrave told Tetreault, "'I want my arrows,'" in a tone that Tetreault described as "pretty demanding" and "[p]retty aggressive." 1 VRP at 175. The last thing Tetreault remembers is bending down to talk to Hunt, Lagrave's girlfriend, through the driver's side window of Lagrave's car.

Hunt described Tetreault's demeanor on the morning of the assault as "irrational and kind of hostile" and said that she had "never seen that side of him before." 2 VRP at 297. She testified that Tetreault was acting "very aggressive" and expressed her opinion that he is "usually . . . very polite and respectful," but on that morning he had a "bad attitude" and was "all poofed up," like he was looking for a fight. 2 VRP at 302. She said that Tetreault "kept doing the shoulder jerk . . . trying to spook [Lagrave] into thinking he was going to punch him." 2 VRP at 304.

Hunt testified that she got out of the car when her kitten escaped, and she said that she was squatting down to retrieve the kitten when Tetreault acted "like he was going to punch [her]," and "that's when [Lagrave] threw the punch at [Tetreault]." 2 VRP at 308. She stated that it "looked like [Tetreault] kind of went towards [Lagrave]" and that Lagrave "maybe swung again" before "grabbing [Tetreault] and just laying him down." 2 VRP at 310.

Tetreault's mother, who also lives on the property, testified that the driver's side door was open, and she saw Lagrave's "arm over the door [of his car] in a fist motion, several fist motions," but she did not see Lagrave make contact with Tetreault. 1 VRP at 127.

B.     Officer Testimony

When Deputy Andrew Anderson testified, he admitted that he did not have "any kind of specialized education or training in how various amounts of meth[amphetamine] might affect various types of people" and that he was not a toxicologist. 2 VRP at 227. Anderson testified that

5

through his work, he "sometimes encounter[s] people who are under the influence of controlled substances," but he said there was nothing about his contact with Tetreault that led him to believe Tetreault was under the influence. 2 VRP at 229.

Similarly, when Deputy Per Richard Perez testified, he denied having any kind of specialized training or education in the use of controlled substances and stated that he was not a toxicologist. Perez testified that he had a certification for completing training on "investigating [driving under the influence] impairment" but he was not "a drug recognition expert." 2 VRP at 236. He explained that the class he completed was three days long, whereas "the drug recognition expert class . . . takes about six months to complete." *Id.* However, Perez did testify on cross-examination that methamphetamine is a stimulant.

C.      Jury Instructions, Argument, and Verdict

The jury was instructed that it is lawful to use force when protecting another person "who he reasonably believes is about to be injured . . . and when force is not more than is necessary." Clerk's Papers at 44. A person may only "employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the person, taking into consideration all of the facts and circumstances known to the person at the time of and prior to the incident." *Id.*

In closing argument, Lagrave reminded the jury, "Tetreault admitted that he had smoked methamphetamine." 3 VRP at 397. Lagrave argued, "You heard from Deputy Perez [that] methamphetamine is a stimulant. I submit it's possible that what Ms. Hunt remembers about what led up to this incident might just be accurate. They came out angry because Mr. Tetreault might have been high." 3 VRP at 397-98. The State objected to this argument as presenting facts not in

6

evidence, and the trial court repeated its instruction to disregard any remark by the lawyers that is not supported by the evidence. Lagrave continued by emphasizing that this is what "'might'" have happened, speculating that perhaps Tetreault did not appear high to the deputies "because he got punched" and "[g]etting punched is a downer . . . [that] might have counteracted whatever was going on." 3 VRP at 398. Lagrave concluded this line of argument by stating, "You take an angry situation and you add some stimulating drugs to it, maybe Ms. Hunt's telling the truth about that." *Id.*

The State responded by arguing that Tetreault's use of methamphetamine was irrelevant. It reiterated Tetreault's testimony that he was no longer under the influence when the assault occurred, as well as law enforcement's testimony that "they didn't notice anything about [Tetreault] . . . that led them to believe that he might have been [under the influence]." 3 VRP at 408. The State further argued that even if Tetreault were under the influence of methamphetamine when the assault occurred, Lagrave failed to offer any evidence "that would have given any kind of meaning to this fact that [Tetreault] used a little bit of methamphetamine three and a half hours prior." *Id.* The State told the jury, Lagrave made "a number of vague assertions about how [methamphetamine] might have affected things or how it might have affected Mr. Tetreault's behavior, but [he] brought you no expert to explain anything . . . [or] anything that might tell you how it affected things." *Id.*

The jury found Lagrave guilty as charged. The trial court sentenced him to 35 months of confinement. He appeals his second degree assault conviction and his sentence.

## ANALYSIS

### I. EVIDENCE OF TETREAULT'S DAILY METHAMPHETAMINE USE

Lagrave argues that the trial court erred when it "excluded relevant and material evidence of [Tetreault's] daily methamphetamine use" because "the jury was not permitted to evaluate the situation from [Lagrave's] perspective." Br. of Appellant at 13. The State contends that there was no error preserved for appeal because "the trial court never excluded offered evidence or testimony" of regular methamphetamine use. Br. of Resp't at 14. According to the State, "The defense made no attempt to demonstrate the particular effect of methamphetamine use on Tetreault or what knowledge, if any, Lagrave had regarding how Tetreault acted while under the influence of methamphetamine." *Id.* We decline to address Lagrave's argument on appeal that evidence of regular methamphetamine use should have been admitted because this issue was not preserved.

Under Washington law, a use of force is lawful where it is employed to aid "a party about to be injured . . . in preventing or attempting to prevent an offense against his or her person" and where "the force is not more than is necessary." RCW 9A.16.020(3). To be lawful, the use of force must be limited to force that "a reasonably prudent person would use under the same or similar conditions." *State v. Watkins*, 61 Wn. App. 552, 561, 811 P.2d 953 (1991). To determine whether the defendant reasonably acted in defense of himself or another, the jury "must place themselves in the shoes of the defendant and judge the legitimacy of [his] act in light of all that [he] knew at the time." *State v. Allery*, 101 Wn.2d 591, 594, 682 P.2d 312 (1984). Where the defendant claims that they acted in defense of themselves or others, evidence of what the defendant "knew about" may be "necessary to establish the source and reasonableness of the defendant's subjective fear." *State v. Jennings*, 14 Wn. App. 2d 779, 791, 474 P.3d 599 (2020).

This court "may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a). An exception is made, however, if the error is a "manifest error affecting a constitutional right." RAP 2.5(a)(3). Lagrave "must identify a constitutional error and show how, in the context of the trial, the alleged error actually affected [his] rights." *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995). An error is only "manifest" if the defendant can make "a plausible showing . . . that the asserted error had practical and identifiable consequences in the trial of the case." *State v. Lynn*, 67 Wn. App. 339, 345, 835 P.2d 251 (1992).

Here, the State brought its motion in limine in part anticipating Lagrave's arguments about Tetreault's methamphetamine use. But Lagrave never actually sought to offer evidence that Tetreault used methamphetamine daily. In response to the State's motion in limine, Lagrave characterized "the defense's position" as "that the alleged victim possibly being under the influence of methamphetamine *at the time* . . . is very much relevant to the question of who the first aggressor was." SCP at 98 (emphasis added).

Lagrave never presented any other position to the trial court. He never asked Tetreault about the frequency of his use, and he never attempted to offer the hospital report where Tetreault apparently admitted to using methamphetamine seven times a week. In addition, he never asked the State's other witnesses about Tetreault's methamphetamine use, and he never asked the State's law enforcement witnesses to elaborate on the possible effects of methamphetamine use, likely because these witnesses testified that they were not experts on the subject. The trial court was never asked to rule on the admissibility of evidence showing that Tetreault used methamphetamine daily or that it caused him to act more aggressively. Therefore, Lagrave failed to preserve any issue about evidence regarding Tetreault's alleged regular methamphetamine use.

Lagrave asserts that this error was constitutional because it deprived him of his right to present a defense. But even if this were true, Lagrave fails to demonstrate that any error was manifest. To evaluate his defense, the jury was required to view the situation from Lagrave's perspective, considering what Lagrave knew at the time of the incident. The jury heard testimony from Hunt describing Tetreault's demeanor on the morning of the assault and that he was unusually aggressive. The jury also heard that Tetreault had smoked methamphetamine that morning. It is unclear how evidence that Tetreault smoked methamphetamine at other times would have allowed the jury to better understand Lagrave's perspective.

Aside from a citation to a law review article claiming that "'prolonged methamphetamine use can result in serious health problems, including . . . aggression [and] psychosis,'" Lagrave offers no argument indicating that Tetreault was known to be aggressive as a result of regular methamphetamine use or that Lagrave was aware of Tetreault's regular methamphetamine use and its effects. Br. of Appellant at 11 (second alteration in original) (quoting Raphael S. Nemes, *Shake and Bake: The Meth Threat and the Need to Rethink 21 U.S.C. § 841(c)(2)*, 88 WASH. U. L. REV. 993, 995 (2011)). Lagrave fails to make a plausible showing that additional evidence about regular methamphetamine use, in addition to the evidence presented about Tetreault's methamphetamine use that morning, would have affected the outcome at trial.

## II.    SENTENCE

Lagrave argues, and the State concedes, that he is entitled to be resentenced because his offender score included a conviction for unlawful possession of a controlled substance. We agree. In *Blake*, the Supreme Court held that Washington's strict liability drug possession statute, RCW 69.50.4013(1), violates state and federal due process clauses and is therefore void. 197 Wn.2d at

No. 54096-7-II

182-83, 186. A conviction based on an unconstitutional statute cannot be considered in calculating the offender score. *See State v. Ammons*, 105 Wn.2d 175, 187-88, 713 P.2d 719, 718 P.2d 796 (1986). Accordingly, Lagrave is entitled to be resentenced because his offender score included an unconstitutional conviction.

## CONCLUSION

We decline to address Lagrave's arguments challenging his conviction on appeal because they were not preserved. Lagrave has not shown that the alleged error was manifest, allowing review for the first time on appeal under RAP 2.5(a). We remand for recalculation of Lagrave's offender score and for resentencing in light of *Blake*.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, A.C.J.

We concur:

Sutton, J.

Veljacic, J.

11