**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
FEBRUARY 3, 2022

_González, C.J._
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
FEBRUARY 3, 2022

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 99337-8 |
| Respondent, | ) | |
| v. | ) | En Banc |
| JUSTIN NICHOLAS JENNINGS, | ) | |
| Petitioner. | ) | Filed: February 3, 2022 |

MADSEN, J.—Justin Jennings was convicted of felony murder and unlawful possession of a firearm for the killing of Chris Burton. At trial, the court held that a toxicology report showing Burton had methamphetamine in his system at the time of death was inadmissible because it was irrelevant and speculative. Jennings appealed, arguing the exclusion of the report violated his constitutional right to present a defense. The Court of Appeals affirmed. Jennings sought review of that decision and also challenges his sentence in light of this court's recent decision in *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021).

No. 99337-8

We affirm the Court of Appeals' holding that the trial court's exclusion of the toxicology report did not violate Jennings' right to present a defense. However, we clarify the test that applies to a claimed constitutional violation of the right to present a defense. In addition, we vacate Jennings' sentence and remand to the trial court for resentencing in light of *Blake*.

FACTS

On May 6, 2017, Jennings went with his friend, Lance Redman, to retrieve Redman's car from a mobile home that Redman had moved out of the day before. When they arrived, Jennings and Redman approached Gary Tongedahl and Burton, who were working on a car in the front yard. According to Tongedahl, Jennings and Redman had bandanas pulled over their faces. Redman asked where his car was. Burton said that he did not know. Redman pulled out a gun and said that they needed to go inside to figure things out.

Both Jennings and Redman carried a can of bear mace in one hand and a gun in the other. According to Jennings, he was on high alert as he entered because he had been made aware of two incidents of assault that had occurred at the mobile home on May 4 and 5. All four men entered the mobile home. Inside, Burton and Redman continued to argue about the location of Redman's vehicle. Redman had his gun clearly displayed as they argued. Redman and Burton charged at each other, and they began to wrestle. According to Jennings, both Redman and Burton appeared to be high on methamphetamine. Jennings could not see Redman's or Burton's hands as the two men wrestled.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 99337-8

During the altercation Jennings stepped forward and sprayed bear mace that struck both Redman and Burton. This caused Redman and Burton to separate. Burton turned and took a step toward Jennings. Jennings took a few steps back and then fired two shots at Burton. According to Albert Duane, who was also present at the time of the shooting, Jennings said, "I got you, dog," before running with Redman out the back door. 6 Report of Proceedings (June 7, 2018) at 990. Burton died shortly thereafter. A toxicology report revealed Burton had a high level of methamphetamine in his system.

Jennings was charged with murder in the second degree (count I), felony murder (count II), and unlawful possession of a firearm in the first degree (count III). Jennings pleaded guilty to the charge of unlawful possession of a firearm in the first degree.

At the pretrial conference, the State moved to exclude questions to the medical examiner regarding the impact that a high level of methamphetamine might have had on the victim as speculative. Jennings argued that the toxicology report was relevant because it corroborated his observation that the victim was high on methamphetamine at the time of the shooting. The trial court excluded the toxicology report under ER 403.

The jury found Jennings guilty of manslaughter in the first degree and felony murder, with each count carrying a firearm enhancement. The manslaughter conviction was vacated as it merged with the murder conviction. Jennings was assigned an offender score of 8 for the murder charge and a score of 7 for the unlawful possession of a firearm charge, which included two prior convictions for possession of a controlled substance.

Jennings appealed, arguing that the trial court's exclusion of the toxicology report violated his constitutional right to present a defense. The Court of Appeals affirmed,

3

No. 99337-8

finding no violation of the right to present a defense. The court added that even if the trial court abused its discretion under ER 401 and 402, the error was harmless. *State v. Jennings*, 14 Wn. App. 2d 779, 790-92, 474 P.3d 599 (2020).

Jennings petitioned for review, arguing the Court of Appeals applied the wrong constitutional standard in determining whether his right to present a defense was violated and incorrectly decided that toxicology evidence was irrelevant to corroborate his self-defense claim. Jennings subsequently asked this court to vacate his sentence and remand for resentencing in light of *Blake*. We granted review. *State v. Jennings*, 197 Wn.2d 1010 (2021).

## ANALYSIS

### 1. Standard of Review

In *State v. Arndt*, this court clarified the test for analyzing whether the Sixth Amendment right to present a defense has been violated. 194 Wn.2d 784, 797-98, 453 P.3d 696 (2019); U.S. CONST. amend. VI; *see also State v. Clark*, 187 Wn.2d 641, 648-49, 389 P.3d 462 (2017). First it analyzed the trial court's evidentiary rulings for abuse of discretion. *Arndt*, 194 Wn.2d at 798-812. Concluding the evidentiary rulings did not constitute abuse of discretion, the court considered de novo whether the exclusion of evidence violated the defendant's constitutional right to present a defense. *Id*. at 813.

In this case, the Court of Appeals acknowledged the two-part test as laid out in *Arndt* but stated, "[I]n this case we address the constitutional question first because if there were a constitutional violation, there is no need to address whether an evidentiary error has occurred." *Jennings*, 14 Wn. App. 2d at 789.

4

No. 99337-8

The State argues that the Court of Appeals applied the *Arndt* standard correctly when it analyzed the constitutional issue before addressing the trial court's evidentiary ruling. According to the State, "this Court made clear in *Arndt* that in all cases, both parts must be analyzed." Suppl. Br. of Resp't at 15 (citing *Arndt*, 194 Wn.2d at 797-98).

Although *Arndt* lays out different standards of review for Sixth Amendment questions and evidentiary rulings, at no point did the court state that both parts must be analyzed in every case. In fact, the court began by analyzing each of the trial court's evidentiary rulings and analyzed whether the exclusion of evidence violated the defendant's right to present a defense only after concluding those rulings were not erroneous. *Arndt*, 194 Wn.2d at 798-812.

The Court of Appeals' concurrence succinctly explains why this order makes sense:

> There are three possible scenarios. If the trial court abused its discretion in making an evidentiary ruling, and the ruling was prejudicial to the defendant, we would avoid the constitutional issue altogether. On the other hand, if the abuse of discretion constituted harmless error, we would address the constitutional standard. Lastly, if the trial court did not abuse its discretion, then we would review the constitutional issue.

*Jennings*, 14 Wn. App. 2d at 800-01 (Melnick, J., concurring) (footnote omitted).

2. <u>The Trial Court Did Not Abuse Its Discretion by Excluding the Victim's Toxicology Report</u>

Trial courts determine whether evidence is relevant and admissible, and appellate courts review the trial court's rulings for abuse of discretion. *State v. Brockob*, 159 Wn.2d 311, 348, 150 P.3d 59 (2006) (citing *State v. Vreen*, 143 Wn.2d 923, 932, 26 P.3d 236 (2001)). A trial court abuses its discretion if "'no reasonable person would take the

5

No. 99337-8

view adopted by the trial court.'" *State v. Atsbeha*, 142 Wn.2d 904, 914, 16 P.3d 626 (2001) (internal quotation marks omitted) (quoting *State v. Ellis*, 136 Wn.2d 498, 504, 963 P.2d 843 (1998)).

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. In addition, ER 403 states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

In this case, the trial court ruled that the toxicology report would invite speculation and mislead the jury. The court relied on *State v. Lewis*, which held that an expert's testimony discussing the general effects of methamphetamine was speculative and irrelevant because the wide range of effects of methamphetamine on different individuals made it impossible for the expert to know how the drug might have affected the victim. 141 Wn. App. 367, 389, 166 P.3d 786 (2007); *see also Gerlach v. Cove Apts., LLC*, 196 Wn.2d 111, 123, 471 P.3d 181 (2020) (affirming the trial court's exclusion of an expert's testimony about BAC (blood alcohol concentration) results because it would be speculative and would risk prejudicing the jury).

The trial court here expressed concern that allowing the toxicology report would essentially allow an unqualified expert, the defendant, to express an opinion about how methamphetamine affected the victim when even a qualified expert would not be able to

6

do so. The court was concerned that the toxicology evidence would be unfairly prejudicial and invite speculation by the jury as to how the methamphetamine in the victim's system might have affected his behavior.

The Court of Appeals assumed, without deciding, that even if the trial court's ruling was an abuse of discretion, the error was harmless. *Jennings*, 14 Wn. App. 2d at 792-93.

A key component of Jennings' self-defense argument was that he reasonably believed that Burton was high on methamphetamine and that in his experience such individuals are erratic, aggressive, and violent. *Id*. Jennings argues that the toxicology report was relevant to weighing the reasonableness of his fear. He argues that the toxicology evidence would have corroborated his impression that Jennings was high on methamphetamine and that the evidence was therefore highly relevant.

To support his argument, Jennings cites to various out-of-state cases that have held trial courts erred when they excluded toxicology evidence in self-defense cases.[1] *See, e.g.*, *Harris v. Cotton*, 365 F.3d 552, 557 (7th Cir. 2004) (reversing a conviction because counsel failed to obtain and present a toxicology report of a victim in a self-defense case); *Newell v. State*, 49 So. 3d 66, 72-73 (Miss. 2010) (finding abuse of discretion when the trial court excluded toxicology results); *Cromartie v. State*, 1 So. 3d 340, 343 (Fla.

---

[1] Jennings also cites *Faust v. Albertson*, where this court held that BAC evidence was admissible to corroborate and support the credibility of an individual's firsthand observations in a civil case. 167 Wn.2d 531, 543, 222 P.3d 1208 (2009). However, *Faust* relied on a statute that allows for the admission of BAC data in both civil and criminal cases if the proceeding arises out of an act alleged to have been committed by a person who is driving while intoxicated and is thus not particularly relevant here. *See* RCW 46.61.506.

Dist. Ct. App. 2009) (holding that the trial court erred by excluding evidence of the victim's blood-alcohol level).[2]

In *Harris*, the Seventh Circuit Court of Appeals noted that "an affirmative defense of self-defense against a drunk and cocaine-high victim stands a better chance than the same defense against a stone-cold-sober victim." 365 F.3d at 556. In *Cromartie*, the court held that the toxicology report was relevant given that the defendant's theory of defense was that the victim was acting in an aggressive manner. 1 So. 3d at 342-43. The court went on to note that "the jury was deprived of evidence that it might have found made the appellant's version of events credible." *Id*. at 343.

The State argues that the fact Burton had methamphetamine in his system was irrelevant because it was only discovered after Burton's death and thus could have had no impact on Jennings' belief when he killed Burton. The State also points to out-of-state cases where the toxicology report of a deceased victim have been excluded. *See, e.g.*, *Lawrence v. State*, 2015 WY 97, ¶ 19, 354 P.3d 77, 83 (upholding the exclusion of toxicology evidence in a self-defense case because there was no evidence that the appellant was aware of the victim's intoxication); *Gill v. State*, 296 Ga. 351, 352, 765 S.E.2d 925 (2014) (affirming exclusion of toxicology report as irrelevant because the defendant could only speculate about the effect the drugs might have had on the victim).

Jennings makes a plausible argument that the toxicology report here was at least minimally relevant. Jennings' stated purpose for introducing the report was to

---

[2] The Washington Association of Criminal Defense Lawyers (WACDL) provides additional support in its amicus brief.

8

corroborate his own observation that Burton appeared high on methamphetamine at the time of the incident. Introducing evidence that Burton was in fact high at the time of the shooting could have bolstered Jennings' credibility with the jury. Moreover, during closing argument, the State improperly pointed to the fact that Jennings had no proof of Burton's intoxication at the time of the shooting, demonstrating the relevance of the toxicology report. Jennings' purpose in offering the toxicology report was to corroborate his stated belief that the victim was high at the time of the shooting. The toxicology report could have made a fact of consequence, that Jennings reasonably believed Burton was high, more probable and thus relevant.

However, the State's argument that Jennings did not know the effect that methamphetamine may have had on the victim was also reasonable. Jennings offered no witness to testify as to the potential effects on the victim or that he had previously observed the victim under the influence of methamphetamine. Under these facts, a reasonable judge could conclude that the toxicology report was speculative and might confuse the jury. Because reasonable minds might differ, we hold the trial court did not abuse its discretion.

3. The Trial Court's Decision To Exclude the Toxicology Report Did Not Violate Jennings' Constitutional Right To Present a Defense

A criminal defendant's right to present a defense is guaranteed by both the federal and state constitutions. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973); *Washington v. Texas*, 388 U.S. 14, 23, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967); *State v. Jones*, 168

Wn.2d 713, 720, 230 P.3d 576 (2010). However, the Constitution permits judges to "'exclude evidence that is repetitive . . . , only marginally relevant or poses an undue risk of harassment, prejudice, [or] confusion of the issues.'" *Holmes v. South Carolina*, 547 U.S. 319, 326-27, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006) (alterations in original) (internal quotation marks omitted) (quoting *Crane v. Kentucky*, 476 U.S. 683, 689-90, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986)).

If the evidence is relevant, the reviewing court must weigh the defendant's right to produce relevant evidence against the State's interest in limiting the prejudicial effects of that evidence to determine if excluding the evidence violates the defendant's constitutional rights. *State v. Hudlow*, 99 Wn.2d 1, 16, 659 P.2d 514 (1983); *State v. Orn*, 197 Wn.2d 343, 353, 482 P.3d 913 (2021).

In this case, the Court of Appeals focused mainly on whether the evidence presented was the defendant's "entire defense" and whether the evidence was of "such high probative value" that no state interest is compelling enough to preclude its introduction. *Jennings*, 14 Wn. App. 2d at 790-91. The court relied on *Arndt* and *Jones*, noting that each of these cases discussed whether the exclusion of evidence eliminated the defendant's entire defense. *Id*.

Jennings argues that the Court of Appeals erred by failing to apply the *Hudlow* balancing test. Suppl. Br. of Pet'r at 7 n.2. The State argues that the Court of Appeals applied the correct test when it examined whether the excluded evidence is the defendant's "entire defense" and whether it was of ""extremely high probative value.""

10

No. 99337-8

Suppl. Br. of Resp't at 11 (quoting *Arndt*, 194 Wn.2d at 813 (quoting *Jones*, 168 Wn.2d at 721)).

Although both *Arndt* and *Jones* focused on whether the evidence constituted the "entire defense" and had "high probative value," the court's discussion was based on the facts of those cases. In each case, the court applied the *Hudlow* balancing test.

In *Hudlow*, the defendant sought to introduce evidence of the victims' past sexual behavior to support his argument that the victims had consented to have sexual intercourse. 99 Wn.2d at 4-5. In deciding whether the exclusion of such evidence violated Hudlow's right to present a defense, the court "balanc[ed] the defendant's right to produce relevant evidence versus the state's interest in limiting the prejudicial effects of that evidence." *Id*. at 16. The court went on to emphasize that no state interest is compelling enough to exclude evidence of "high probative value." *Id*.

There the State argued that allowing the introduction of the victims' sexual behavior could bias the jury and discourage future victims from agreeing to testify. *Id*. The court balanced the State's compelling interest in limiting the prejudicial effects of the evidence on the jury and the slight relevancy of the evidence and concluded that the trial court correctly excluded the evidence. *Id*. at 18. The court went on to note that excluding the evidence did not deprive the respondents of the opportunity to testify to their version of the incident. *Id*.

In *Jones*, the trial court barred the defendant from introducing evidence based on a rape shield statute. We acknowledged the *Hudlow* requirements that evidence be minimally relevant and the required balancing of the State's interest and the defendant's

11

need to present information. *Jones*, 168 Wn.2d at 720. Given the facts of the case, the court held that the exclusion of evidence effectively barred Jones from presenting his defense and thus violated his Sixth Amendment rights. *Id*. at 721. The court's holding was not that the Sixth Amendment protects only evidence that is of high probative value, but rather that evidence of "extremely high probative value . . . cannot be barred without violating the Sixth Amendment." *Id*. at 724.

Similarly in *Arndt*, the court leaned heavily on the fact that in *Jones* the excluded evidence constituted the defendant's "entire defense" in weighing whether Arndt's Sixth Amendment rights were violated. *Arndt*, 194 Wn.2d at 812-13. But the court reiterated the proper test: "the State's interest in excluding evidence must be balanced against the defendant's need for the information sought to be admitted." *Id.* at 812. The court determined that Arndt was able to offer evidence in support of her defense theory without the excluded evidence. *Id.* at 814.

In *State v. Lee*, the trial court excluded questions to a witness about a prior false rape accusation. 188 Wn.2d 473, 480, 396 P.3d 316 (2017). Applying the *Hudlow* test, this court found no error because the low probative value of the evidence was outweighed by the State's interest in limiting prejudice. *Id*. at 495. As in *Hudlow*, the court was concerned that the excluded testimony would prejudice the jury and prevent future sexual assault victims from speaking out. *Id*.

We recently applied the *Hudlow* balancing test in *Orn*, 197 Wn.2d at 356-59. There the court held the defendant's constitutional right to present a defense had been violated because the State had not made a showing that the evidence was prejudicial and

12

the defendant's need to present the evidence greatly outweighed any purported state interest. *Id*.

Because we find no error in the trial court's evidentiary ruling, we must balance Jennings' right to present toxicology evidence against the State's interest in limiting the prejudicial effects of the evidence.

Jennings argues that the toxicology report was crucial because it corroborated his testimony regarding self-defense.

On the other side of the balancing test, the State argues that the toxicology evidence would mislead the jury, especially since any expert testimony about the effects of the drugs in the victim's system would be inadmissible. The State was concerned that the jury would make prejudicial inferences, unsupported by the evidence, about the victim's actions given his intoxication level. Although the toxicology report would have corroborated Jennings' belief that Burton was high on methamphetamine, the jury would be left to speculate as to the effect the drugs might have had on Burton when determining whether Jennings' fear was reasonable.

At its core, the constitutional right to present a defense ensures the defendant has an opportunity to defend against the State's accusations. In *Hudlow*, we observed that "the integrity of the truthfinding process and [a] defendant's right to a fair trial" are both important considerations. 99 Wn.2d at 14. There we noted that the defendant's evidence was minimally relevant, but that the defendant had the opportunity to present his version of the incident, even if some evidence was excluded. *Id*. at 18. Similarly, in this case the toxicology report is minimally relevant. Although the excluded evidence would have

13

No. 99337-8

corroborated the defendant's observations of the victim and bolstered Jennings'

credibility in the eyes of the jury, it was minimally probative.

In *Hudlow* we made a clear distinction between evidence of the general

promiscuity of a rape victim and evidence that, if excluded, would deprive the defendant

of the ability to testify to their versions of the incident. *Id*. at 17-18. Similar to *Hudlow*,

we find a distinction between evidence that merely bolsters credibility and evidence that

is necessary to present a defense. Here, Jennings was still able to testify regarding his

subjective fear and belief that Burton was high on methamphetamine, which was his

theory of the case. Given the State's interest in avoiding the prejudicial and speculative

effect that the toxicology report might have on the fact-finding process, we conclude that

excluding the report did not deprive Jennings of his constitutional right to present a

defense.

4. We Vacate the Sentences and Remand for Resentencing in Light of
   *State v. Blake*

A prior conviction that is constitutionally invalid on its face may not be included

in a defendant's offender score. *State v. Ammons*, 105 Wn.2d 175, 187-88, 713 P.2d 719

(1986). In *Blake*, this court held that RCW 69.50.4013(1), the statute criminalizing

simple drug possession, is unconstitutional.

In this case, the trial court counted Jennings' prior convictions for drug possession

when calculating his offender score. In light of *Blake*, those convictions are

constitutionally invalid and cannot be considered in the offender score. Both parties

14

No. 99337-8

agree on this point.  We vacate Jennings' sentence and remand the case to the trial court for resentencing.

CONCLUSION

We affirm the Court of Appeals' holding that the trial court's exclusion of the toxicology report did not violate Jennings' right to present a defense.  We affirm the convictions but vacate Jennings' sentence and remand to the trial court for resentencing in light of *Blake*.

_____
Madsen, J.

WE CONCUR:

_____
González, C.J.

_____
Johnson, J.

_____
Yu, J.

_____
Owens, J.

_____
Stephens, J.

_____
Montoya-Lewis, J.

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Jennings (Justin Nicholas)*, No. 99337-8
(Gordon McCloud, J., concurring in part/dissenting in part)

No. 99337-8

GORDON McCLOUD, J. (concurring in part/dissenting in part)—The

critical issue in this case was self-defense. Justin Nicholas Jennings was charged

with murder for shooting Christopher Burton after an argument over a missing car

became violent. Jennings testified that Burton appeared high on methamphetamine

and that based on Jennings' experience, people on methamphetamine are more

likely to act aggressively and unpredictably. Jennings further testified that Burton

charged Jennings' visibly armed friend, appeared to obtain that friend's gun, and

then began rushing toward Jennings. Jennings concluded that he feared for his life

when Burton rushed toward him and that he shot Burton in self-defense.

At trial, Jennings sought to introduce evidence from a toxicology report

showing that Burton had "a very high level" of methamphetamine in his system at

the time of death. 1 Report of Proceedings (RP) (May 29, 2018) at 95. Jennings

argued this evidence was relevant to corroborate his own perception of danger at

the time he shot Burton. But the trial court excluded the evidence as irrelevant and

speculative.

1

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Jennings (Justin Nicholas)*, No. 99337-8
(Gordon McCloud, J., concurring in part/dissenting in part)

Jennings argues that the trial court's decision to exclude the toxicology evidence violated his right to present relevant evidence and his Sixth Amendment right to present a defense. U.S. CONST. amend. VI; *see also* WASH. CONST. art. I, § 22. I agree with the majority that under this court's precedent, we analyze a claim that exclusion of evidence violated the right to present a defense by first analyzing the exclusion for abuse of discretion. If no abuse of discretion is found, we then analyze the claim under the Sixth Amendment.

I disagree, however, with the majority's application of this framework. In my view, the exclusion of the toxicology evidence that tended to corroborate the defendant's own, otherwise arguably self-serving, testimony on the most critical issue in dispute constituted an abuse of discretion, and that error was not harmless. And if we proceed to a constitutional analysis, I would conclude that the exclusion of the evidence violated Jennings' right to present a defense. Excluding the report deprived Jennings of his most valuable evidence but produced no corresponding value to the State except to bolster its case. The Sixth Amendment provides more protection than that.

I agree with the majority's conclusions on the *Blake*[1] resentencing issue. I therefore respectfully concur in part and dissent in part.

_____
[1] *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021).

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Jennings (Justin Nicholas)*, No. 99337-8
(Gordon McCloud, J., concurring in part/dissenting in part)

FACTS AND PROCEDURAL HISTORY

Jennings accompanied Lance Redman to a friend's mobile home so Redman could retrieve a car he had left there. 9 RP (June 12, 2018) at 1307. Gary Tongedahl and Burton were on the property working on a different car. 5 RP (June 6, 2018) at 787-88. Tongedahl testified that upon arrival, both Redman and Jennings were visibly armed and wearing bandanas over their noses and mouths. *Id.* at 792-94. When Redman didn't see his car outside, he told the men they all needed to go inside to figure things out. *Id.* at 795.

Inside the mobile home, Redman and Burton started to argue. *Id.* at 802. Jennings testified that Redman and Burton then scuffled physically. 6 RP (June 7, 2018) at 1020. The fight escalated, and ultimately, Jennings shot and killed Burton. 5 RP (June 6, 2018) at 810, 813; 9 RP (June 12, 2018) at 1332, 1424.

Jennings was charged with second degree intentional murder in count I, second degree felony murder in count II, and first degree unlawful possession of a firearm in count III. Clerk's Papers (CP) at 5-6. He pleaded guilty to the firearm count but stood trial on the murder charges. CP at 46-55.

At trial, Jennings claimed self-defense: he testified that he shot Burton because he reasonably feared for his life. 9 RP (June 12, 2018) at 1323-24, 1328, 1337. Jennings explained that based on his life experiences, he had observed

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

people who were high on methamphetamine. 8 RP (June 11, 2018) at 1297. He continued that in his experience, people on methamphetamine tended to exhibit "rash movements" and "aggressiveness." *Id*. Based on Burton's behavior and appearance, Jennings believed Burton was "amped up on methamphetamine." 9 RP (June 12, 2018) at 1322-24; 8 RP (June 11, 2018) at 1297. Jennings further testified that Burton was the first aggressor in the scuffle that erupted between Burton and the visibly armed Redman, and that Burton's earlier aggression further confirmed to Jennings that Burton was "not in [his] right mind." 9 RP (June 12, 2018) at 1322-24. Jennings sprayed bear mace to break up the fight. *Id*. at 1327-28. But Burton then turned toward Jennings with his hands up and began to quickly move toward Jennings. *Id*. at 1329. At that moment, Jennings believed he saw a gun in Burton's hand, 8 RP (June 11, 2018) at 1290, and Jennings began backing up toward the hallway because he "didn't want to shoot" Burton. 9 RP (June 12, 2018) at 1331. Jennings testified that he shot Burton when Burton continued to stride toward Jennings. *Id*.

Jennings sought to have a medical examiner testify that a postmortem toxicology exam showed Burton actually did have methamphetamine in his system. 1 RP (May 29, 2018) at 95; 3 RP (June 4, 2018) at 422. Jennings testified that based on personal experience, he believed people on methamphetamine are

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

more likely to act violently and unpredictably. 9 RP (June 12, 2018) at 1323-24, 1332, 1345, 1423. Thus, Jennings argued that the toxicology evidence was relevant to his claim of reasonable fear because it corroborated his perception that Burton was amped up on methamphetamine and that he, Jennings, was in imminent danger. Pet. for Review at 4.

The trial court excluded the proffered medical examiner testimony. It stated that allowing the medical examiner to testify about the toxicology results would necessarily involve the examiner speculating about the specific effect of methamphetamine on Burton. 1 RP (May 29, 2018) at 98-99. The trial court appeared to base its decision on both Rules of Evidence (ER) 402 (relevance) and ER 403 (prejudice), explaining that "it's irrelevant and it is, in fact, speculative as to how methamphetamine and what quantity affected this particular person." *Id.* at 97.

The jury found Jennings guilty of both first degree manslaughter as charged in count I and second degree felony murder as charged in count II, each with a deadly weapon enhancement. CP at 112-15. The trial court vacated the manslaughter conviction because it merged into the felony murder conviction. *Id.* at 144-45. On appeal, Jennings argued that the decision to exclude the toxicology

*State v. Jennings (Justin Nicholas)*, No. 99337-8
(Gordon McCloud, J., concurring in part/dissenting in part)

evidence violated both his right to present relevant and admissible evidence, and

his Sixth Amendment right to present a defense.

The Court of Appeals affirmed. *State v. Jennings*, 14 Wn. App. 2d 779, 474

P.3d 599 (2020). Jennings sought review in this court, arguing (in part) (1) that the

toxicology evidence was relevant and admissible to corroborate Jennings' firsthand

observations of Burton's intoxicated state and Jennings' consequent fear and (2)

that the Court of Appeals applied the wrong standard for determining whether

excluding the toxicology evidence violated his Sixth Amendment right to present a

defense. Pet. for Review at 1.[2] We granted review.  *State v. Jennings*, 197 Wn.2d

1010 (2021).

I.   <u>The trial court abused its discretion by excluding the only piece of
     objective, scientific evidence supporting Jennings' claim of self-defense;
     this error was not harmless</u>

*A.  Exclusion of the evidence constituted an abuse of discretion*

To establish self-defense, a defendant must show that they had a

"'subjective, reasonable belief of imminent harm from the victim.'"[3]  The jury

---

[2] As mentioned above, Jennings also challenges his sentence in light of *Blake*, 197
Wn.2d 170.

[3] *State v. Grott*, 195 Wn.2d 256, 266, 458 P.3d 750 (2020) (quoting
*State v. LeFaber*, 128 Wn.2d 896, 899, 913 P.2d 369 (1996), *abrogated on other grounds
by State v. O'Hara*, 167 Wn.2d 91, 217 P.3d 756 (2009)).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

must determine whether the belief was "reasonable" "from all the surrounding facts and circumstances as they appeared to the defendant."[4] Thus, evidence corroborating the defendant's perception of the situation is highly relevant: it has the "tendency to make the existence of any fact that is of consequence to the determination of the action"—here, that Jennings' belief that Burton was amped up on methamphetamine was objectively reasonable—"more probable or less probable." ER 401. As we have previously explained in a similar context, "[b]y learning of the defendant's perceptions and the circumstances surrounding the act, the jury is able to make the '*critical determination* of the degree of force which . . . a reasonable person in the same situation . . . seeing what [s]he sees and knowing what [s]he knows, then would believe to be necessary.'" *State v. Janes*, 121 Wn.2d 220, 239, 850 P.2d 495 (1993) (most alterations in original) (internal quotation marks omitted) (quoting *State v. Wanrow*, 88 Wn.2d 221, 238, 559 P.2d 448 (1977) (plurality opinion)).

The evidence at issue in this case—toxicology evidence—is especially relevant in this situation. It provides objective, unbiased, and scientific

---

[4] *LeFaber*, 128 Wn.2d at 900 (citing *State v. Janes*, 121 Wn.2d 220, 238-39, 850 P.2d 495 (1993); *State v. Allery*, 101 Wn.2d 591, 594, 682 P.2d 312 (1984); *State v. McCullum*, 98 Wn.2d 484, 656 P.2d 1064 (1983) (plurality opinion); *State v. Wanrow*, 88 Wn.2d 221, 235-36, 559 P.2d 548 (1977) (plurality opinion)).

*State v. Jennings (Justin Nicholas)*, No. 99337-8
(Gordon McCloud, J., concurring in part/dissenting in part)

corroboration of "'the defendant's perception that the victim was, in fact, intoxicated.'" *Swilley v. State*, 295 So. 3d 362, 365 (Fla. Dist. Ct. App. 2020) (quoting *Arias v. State*, 20 So. 3d 980, 984 (Fla. Dist. Ct. App. 2009)). Numerous state appellate courts have therefore held that toxicology evidence is relevant and admissible to corroborate a defendant's claim of reasonable fear of imminent harm. *Id.* (where defendant testified that decedent appeared intoxicated, it was reversible error to exclude evidence of decedent's blood alcohol concentration); *Newell v. State*, 49 So. 3d 66, 73 (Miss. 2010) (toxicology results were "relevant to show 'all the circumstances under which the fatal difficulty occurred, and which would in any manner . . . indicate the mental state of the deceased'" (alterations in original) (quoting *Byrd v. State,* 154 Miss. 742, 123 So. 867, 869 (1929))); *Cromartie v. State*, 1 So. 3d 340, 343 (Fla. Dist. Ct. App. 2009) (evidence of decedent's blood alcohol level was relevant and especially important given that it was the only evidence besides defendant's testimony that supported his claim of self-defense); *Jones v. State*, 2009 OK Cr 1, ¶ 40, 201 P.3d 869, 881-82 (evidence that decedents had drugs in their systems would have "corroborated [defendant's] testimony that the group of people he encountered . . . were under the influence of illegal drugs and acting unusually aggressive, thus causing him to fear for his life and act in defense of his life"); *State v. Ventre*, 811 A.2d 1178, 1185 (R.I. 2002) (evidence of

8

*State v. Jennings (Justin Nicholas)*, No. 99337-8
(Gordon McCloud, J., concurring in part/dissenting in part)

decedent's intoxication "should have been admitted since it may have been relevant even without the support of further expert testimony to establish the probability that [decedent] may well have been disinhibited by intoxication and more likely to have engaged in aggressive conduct toward defendant"); *State v. Baker*, 88 Ohio App. 3d 204, 212, 623 N.E.2d 672 (1993) (toxicology evidence was "relevant to the issue of who was the aggressor and . . . the trial court erred in excluding it").

The decision in *Harris v. Cotton*, quoted by the majority, clearly explains the relevance and probative value of such evidence. 365 F.3d 552, 556 (7th Cir. 2004); majority at 8-9. In that case, the Seventh Circuit Court of Appeals held that defense counsel's failure to obtain and present decedent's toxicology report constituted ineffective assistance of counsel because that report would have corroborated defendant's claim that he acted in self-defense.[5] Specifically, that court explained that "an affirmative defense of self-defense against a drunk and cocaine-high victim stands a better chance than the same defense against a stone-cold-sober victim." *Id.* The Seventh Circuit underscored this conclusion by explaining that

---

[5] The Indiana self-defense law at issue contained the same objective and subjective standards as Washington's law: "Under relevant state law, a 'person is justified in using reasonable force against another person to protect [himself] from what [he] reasonably believes to be the imminent use of unlawful force.'" *Harris,* 365 F.3d at 556 (alterations in original) (quoting former IND. CODE § 35-41-3-2(a) (1979)).

9

*State v. Jennings (Justin Nicholas)*, No. 99337-8
(Gordon McCloud, J., concurring in part/dissenting in part)

evidence relating to the decedent's behavior is "extremely important" in a self-defense case because it is highly relevant to assessing the reasonableness of the defendant's perception of imminent harm. *Id.* As a result, the Seventh Circuit—applying the extremely hard-to-satisfy tests of the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d)—granted the writ. *Id.* at 557. It ruled that the state court's decision to uphold the conviction was not just incorrect but "unreasonably" so: "We find that Harris's right to effective assistance of trial counsel was violated. We further find that the state court's treatment of Harris's *Strickland*[6] [ineffective assistance] claim constitutes an *unreasonable application of clearly established federal law*. We REVERSE the denial of the writ by the district court and REMAND with directions to grant the writ . . . ." *Id*. (emphasis added).

The same principle applies here, under the much less demanding tests for determining error and prejudice that we apply on direct appeal in this court. Jennings testified that right before he shot, he reasonably feared imminent harm from Burton. Jennings said that his perception that Burton was high on methamphetamine triggered that fear. Jennings further explained that in his experience, people on methamphetamine act unpredictably and often aggressively.

---

[6] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

10

*State v. Jennings (Justin Nicholas)*, No. 99337-8
(Gordon McCloud, J., concurring in part/dissenting in part)

Jennings offered the toxicology report showing that Burton had high levels of methamphetamine in his system to corroborate his testimony about his own perceptions and state of mind at the time he shot Burton. This objective evidence was relevant and highly probative of Jennings' asserted reasonable fear.

The trial court in this case came to a different conclusion about the toxicology report's relevance, admissibility, and value to the defense. It ruled that the toxicology evidence was irrelevant and speculative based on *State v. Lewis*, 141 Wn. App. 367, 166 P.3d 786 (2007). In *Lewis*, a medical examiner testified that the decedent in a self-defense case had a high level of methamphetamine in his body. *Id.* at 386. The defendant offered testimony from the examiner about the "'general effects' of high levels of methamphetamine in some people—that they can cause aggressive and irrational behavior, depending on the individual's tolerance level for the drug." *Id.* However, "at that point in the trial, Lewis had said nothing in his opening statement about a defense theory that [the decedent] was high on methamphetamine such that it caused him to charge toward Lewis, thus provoking Lewis's shooting in self-defense. Nor had Lewis presented any testimony to support such a theory." *Id.* at 388. The medical examiner could not offer an opinion on how methamphetamine specifically affected the decedent's body. *Id.* at 388-89. The trial court excluded the testimony, concluding that general

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

testimony that high levels of methamphetamine may cause aggressive behavior was irrelevant unless the examiner could also testify as to its specific effects on the decedent. *Id.* That court based its determination of relevance in large part on the fact that the medical examiner could not testify that "'methamphetamine *caused* [the decedent] to act violently.'" *Id.* (emphasis added) (quoting court papers).

The facts of this case, however, differ from the facts of *Lewis* in several critical ways. First, Jennings—unlike Lewis—argued from the outset that he reasonably feared Burton because he perceived Burton was high on methamphetamine. 3 RP (June 4, 2018) at 506 (opening statement by defense). Next, the jury in Jennings' case—unlike the jury in Lewis's case—did not even get to hear the objective fact that Burton had methamphetamine in his system. *Cf. Lewis*, 141 Wn. App. at 386. The *Jennings* trial judge excluded all evidence about that objective fact on the ground that it would be general and speculative due to its reliance on guesses about the individualized effects of methamphetamine on Burton. 1 RP (May 29, 2018) at 96-99; 3 RP (June 4, 2018) at 426.

That brings us to the third major difference between the facts of Jennings' case and the facts of Lewis' case: Jennings offered no general, speculative guesswork of the sort offered by Lewis. Instead, he offered testimony regarding the objective fact, documented by a scientific test, that there was methamphetamine in

State v. Jennings (Justin Nicholas), No. 99337-8
(Gordon McCloud, J., concurring in part/dissenting in part)

Burton's system. *See* 3 RP (June 4, 2018) at 424-27. "Because the "'vital question is the reasonableness of the defendant's apprehension of danger,'" the jury must stand "'as nearly as practicable in the shoes of [the] defendant, and from this point of view determine the character of the act.'"'"[7] Standing in Jennings' shoes, the jury would need to view the events from the perspective of someone whose life experiences had shown that people high on methamphetamine act unpredictably and aggressively. Suppl. Br. of Pet'r at 13. As Jennings argues, "From this perspective, the definitive fact that Burton was high on meth[amphetamine] not only corroborated Jennings' firsthand account, but it also tended to make more reasonable his subjective apprehension that he was in serious danger at the time he shot Burton." *Id.* So the result in *Lewis* is not persuasive in this case with such critically different facts.

In addition, *Lewis* misperceived the relevance of toxicology evidence in this type of case. The *Lewis* court excluded the evidence in part because the medical examiner could not testify that "'methamphetamine *caused* [the decedent] to act violently.'" 141 Wn. App. at 388 (emphasis added) (quoting court papers). But under the evidence rules, evidence is relevant if it has "any tendency to make the

_____

[7] *State v. Duarte Vela*, 200 Wn. App. 306, 319, 402 P.3d 281 (2017) (alteration in original) (quoting *Wanrow*, 88 Wn.2d at 235 (quoting *State v. Ellis*, 30 Wash. 369, 373, 70 P. 963 (1902))).

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

existence of any fact that is of consequence to the determination of the action *more or less probable* than it would be without the evidence." ER 401 (emphasis added). Jennings did not seek to prove that methamphetamine *caused* Burton to act aggressively. Rather, he was seeking to introduce objective evidence that Burton had methamphetamine in his system because such evidence would make it more *probable* that Jennings reasonably perceived Burton was high on methamphetamine—and thus that Jennings reasonably feared that Burton might act aggressively or unpredictably. That's all that ER 401 and 402 demand.

The State cites *Gerlach v. Cove Apartments, LLC*, 196 Wn.2d 111, 471 P.3d 181 (2020), to support its argument that the toxicology evidence was irrelevant. Suppl. Br. of Resp't at 20. But the facts of *Gerlach* are even farther afield from the facts of this case. In that civil case, Gerlach sued an apartment complex, Cove, because Gerlach fell off the balcony of a Cove apartment due to its decayed railing. *Gerlach*, 196 Wn.2d at 115. Cove asserted an affirmative defense under RCW 5.40.060, which provides that it is a defense to a personal injury claim that the plaintiff was intoxicated at the time of the accident, that the intoxication was the proximate cause of the accident, and that the plaintiff was more than 50 percent at fault. *Id.* at 117. Cove offered evidence of Gerlach's blood alcohol concentration (BAC) to "prove Gerlach's intoxication was a proximate cause of her injuries and

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

that she was more than 50 percent at fault." *Id.* at 123. The trial court excluded the evidence. *Id.* The jury found Cove 93 percent at fault for Gerlach's injuries. *Id.* at 115. The Court of Appeals reversed, finding the trial court erred by excluding the evidence. *Id.* at 118.

We reversed the Court of Appeals, holding in part that the trial court did not abuse its discretion in excluding the BAC evidence because it was only minimally relevant to Cove's defense. *Id.* at 116. Gerlach admitted she was intoxicated, thus conceding the first prong of Cove's defense. *Id.* at 125. We held that the BAC evidence was irrelevant to determining *causation or fault* because the mere "fact of intoxication does not prove a person was acting in any particular way." *Id.* at 126. Thus, "without other evidence or testimony that could connect Gerlach's BAC results to behavior that caused her [injury], the BAC results were not relevant to whether her intoxication was a proximate cause of her injuries or to her degree of fault." *Id.*

*Gerlach* thus differs dramatically from this case. First, the elements of the defense asserted in that case were very different: Cove's statutory defense was all about proximate cause, while Jennings' self-defense claim required no proof of proximate cause or allocation of fault. Rather, for Jennings' defense, "use of force is lawful and justified where the defendant has a 'subjective, reasonable belief of

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

imminent harm from the victim.'" *State v. Grott*, 195 Wn.2d 256, 266, 458 P.3d

750 (2020) (quoting *State v. LeFaber*, 128 Wn.2d 896, 899, 913 P.2d 369

(1996), *abrogated on other grounds by State v. O'Hara*, 167 Wn.2d 91, 217 P.3d

756 (2009)). The defendant's own perception of danger is key in a self-defense

claim. Jennings did not offer the evidence to prove that methamphetamine *caused*

Burton to act in any particular way, but rather, because it would serve to

corroborate Jennings' claim of reasonable fear. *See* 3 RP (June 4, 2018) at 424-28.

Next, unlike in *Gerlach*, the defense in this case offered the toxicology

evidence to support Jennings' testimony about *his own observations*. Additionally,

unlike in *Gerlach*, the *plaintiff* (the State) *here made no prior admission that*

*Burton was intoxicated*.   In fact, as the majority correctly notes, the State's closing

argument "improperly pointed to the fact that Jennings had no proof of Burton's

intoxication at the time of the shooting." Majority at 9 (citing 10 RP (June 13,

2018) at 1540). That argument allowed the jury to draw the incorrect inference that

Burton was likely *not* intoxicated—exactly the opposite of the plaintiff's admission

of intoxication that the jury was able to consider in *Gerlach*.

To be sure, the majority in this case correctly concludes that the toxicology

report was relevant.  But it characterizes this evidence as merely "minimally

probative." Majority at 14. To the contrary, evidence relevant to establishing the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

reasonableness of a defendant's fear is "highly probative." *State v. Duarte Vela*, 200 Wn. App. 306, 320, 402 P.3d 281 (2017). In this case, the toxicology evidence was also the *only* objective, unbiased evidence that supported Jennings' theory of self-defense. *Cf. Cromartie*, 1 So. 3d at 343 ("Particularly because Mr. Cromartie's testimony. . . [was] not corroborated by other witnesses, evidence of the victim's intoxication could have been critical in bolstering his theory of defense."); *see also State v. Bolaski*, 2014 VT 36, ¶ 56, 196 Vt. 277, 301-02, 95 A.3d 460 (evidence of decedent's drug use at time of killing is admissible in "cases where the defendant alleges self-defense and the circumstances of the death are contested").

Without such objective corroborating evidence, there is a strong risk that the jury might discredit the defendant's testimony "'on the ground that he had furnished no corroboration of a story that any accused person might easily fabricate to support a claim of self-defense.'" *Baker*, 88 Ohio App. 3d at 208 (quoting *McGaw v. State*, 123 Ohio St. 196, 200, 174 N.E. 741 (1931)). Indeed, as the majority points out, the State made that very argument—and underscored the relevance of the toxicology report in its closing argument statement "that Jennings had no proof of Burton's intoxication at the time of the shooting." Majority at 9 (citing 10 RP (June 13, 2018) at 1540).

17

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Given the relevance of the toxicology evidence and its critical importance to Jennings' defense theory, the trial court's decision to exclude it constituted an abuse of discretion. *Accord Newell*, 49 So. 3d at 73 (in self-defense case, "the exclusion of [the decedent's] toxicology results was an abuse of discretion"); *Baker*, 88 Ohio App. 3d at 212 (same); *see also Harris*, 365 F.3d 552 (reversible error for counsel to fail to obtain and offer toxicology evidence in self-defense case).

The majority does not necessarily disagree with this approach. It concludes that this approach to relevance and admissibility is "reasonable" but that the State's approach is also "reasonable," so the trial court could exercise its discretion to decide admissibility either way. Majority at 10. I understand that many evidentiary rulings are reviewed for abuse of discretion. But in this case, the State's argument that the evidence was irrelevant and speculative is legally unpersuasive. We should provide guidance to lower courts by following the lead of *Harris* and the other decisions discussed above and clearly establishing that toxicology evidence is relevant and potentially admissible in criminal cases involving a claim of self-defense.

In sum, the toxicology report was highly probative because it corroborated Jennings' testimony about his own reasonable fear. Excluding the report deprived

18

*State v. Jennings (Justin Nicholas)*, No. 99337-8
(Gordon McCloud, J., concurring in part/dissenting in part)

Jennings of his most valuable evidence—but it produced no corresponding value to the State except to bolster the State's case.

### B. *The error was not harmless*

To determine whether a trial court's abuse of discretion warrants reversal, we apply the nonconstitutional harmless error standard: a nonconstitutional error is "'not prejudicial unless, within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'" *State v. Smith*, 106 Wn.2d 772, 780, 725 P.2d 951 (1986) (quoting *State v. Cunningham*, 93 Wn.2d 823, 831, 613 P.2d 1139 (1980)). Here, the record suggests that the outcome of the trial would have been materially affected if the court had admitted the toxicology evidence.

The jury heard conflicting versions of the events leading to Jennings shooting Burton. *See, e.g.*, 5 RP (June 6, 2018) at 806, 881; 6 RP (June 7, 2018) at 1037; 9 RP (June 12, 2018) at 1330-31, 1334. Witnesses could not agree if Jennings and Redman showed up to the property armed and wearing bandanas or not. *Compare* 5 RP (June 6, 2018) at 794-95, *with id.* at 954. And the surviving eyewitnesses to the fight offered conflicting testimony on what happened. Jennings testified as described above. Of the three other surviving eyewitnesses to the fight, two testified. (Redman exercised his Fifth Amendment rights and did not testify. 4

19

*State v. Jennings (Justin Nicholas)*, No. 99337-8
(Gordon McCloud, J., concurring in part/dissenting in part)

RP (June 5, 2018) at 598.) Gary Tongedahl testified that after the scuffle between Burton and Redman ended, Burton remained standing where he was and did not make any sudden movements or threats before Jennings shot him. 5 RP (June 6, 2018) at 807, 809. Tongedahl acknowledged, however, that immediately after the shooting, he had told police that Burton had made a "throwing motion" in Jennings' direction right before being shot. *Id.* at 874. Albert Duane testified that Redman was the first aggressor in the scuffle between Burton and Redman. 6 RP (June 7, 2018) at 1020. He initially testified that after the scuffle between Burton and Redman ended, Burton "pretty much stayed where he was" and then Jennings shot him. *Id.* at 988. But on cross-examination, Duane testified that Burton took five or six steps toward Jennings before Jennings fired. *Id.* at 1026-27.

Clearly, jurors could question the credibility of all of these witnesses. *See also id.* at 1012, 1031 (Duane testifies inconsistently about Jennings' demeanor upon entering the mobile home), 988, 1026-27 (Duane testifies inconsistently about whether Burton moved toward Jennings prior to being shot); 5 RP (June 6, 2018) at 836-41, 873 (Tongedahl is cross-examined about prior inconsistent statements he made to the police about the incident). To be sure, Jennings' own credibility was also at issue: he admitted to having lied in the immediate aftermath of the shooting and while in jail about whether he was the shooter. 8 RP (June 11,

20

2018) at 1285. As discussed above, the prosecutor also attempted to undermine Jennings' credibility by arguing that although Jennings testified he believed Burton was high at the time of the shooting, Jennings "ha[d] no proof of it at that time." 10 RP (June 13, 2018) at 1540. This was a critical problem. *See Harris*, 365 F.3d at 557 ("[T]he jury was left with the impression that the decedent *was not intoxicated* when, in fact, he was quite inebriated. If the jury believed that [the decedent] was sober, there is a reasonable probability that they would not have believed Harris's version of events as it related to [the decedent's] behavior.").

Thus, in this case, the toxicology evidence was "the only unbiased source of corroboration for [defendant's] testimony" about his reasonable fear prior to the shooting. *DePetris v. Kuykendall*, 239 F.3d 1057, 1059 (9th Cir. 2001). Given the conflicting testimony and credibility problems of all the testifying eyewitnesses, admission of the toxicology evidence would have materially changed the outcome of the trial.

I would therefore hold that the trial court's erroneous exclusion of the toxicology evidence was not harmless. I would resolve the case on this basis without proceeding to a constitutional analysis. However, because the majority resolves the case on constitutional grounds, I take this opportunity to offer some observations.

*State v. Jennings (Justin Nicholas)*, No. 99337-8
(Gordon McCloud, J., concurring in part/dissenting in part)

II.    The exclusion of the evidence violated Jennings' Sixth Amendment right to present a defense, and the error was not harmless

Both the federal and state constitutions protect the right of criminal defendants to present a complete defense. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *Chambers v. Mississippi*, 410 U.S. 284, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973); *Washington v. Texas,* 388 U.S. 14, 23, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967); *State v. Hudlow*, 99 Wn.2d 1, 14-15, 659 P.2d 514 (1983).

I agree with the majority's clarification of the standard of review for claimed violations of the Sixth Amendment right to present a defense, specifically, that where, as here, the appellant raises an ER issue, we begin by reviewing whether the exclusion of evidence was an abuse of discretion; if the appellant's ER claim fails and the appellant also raises a Sixth Amendment issue, then we move to the constitutional analysis as laid out in *Hudlow*. However, I disagree with the majority's application of the *Hudlow* analysis to this case. In my view, Jennings' need to present the toxicology evidence far outweighed the State's purported interest in excluding it.

Under the *Hudlow* test, the defendant must first show that the evidence he or she seeks to admit is minimally relevant and probative. *Hudlow*, 99 Wn.2d at 16. Then, "if relevant, the burden is on the State to show the evidence is so prejudicial

22

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

as to disrupt the fairness of the fact-finding process at trial." *State v. Darden*, 145

Wn.2d 612, 621-22, 41 P.3d 1189 (2002) (citing *Hudlow*, 99 Wn.2d at 15). If the

State fails to show this, the analysis ends, and the exclusion of the relevant,

nonprejudicial evidence violated the defendant's Sixth Amendment right to present

a defense; that exclusion is then subject to constitutional harmless error analysis.

*State v. Orn*, 197 Wn.2d 343, 356, 482 P.3d 913 (2021). If the evidence *is*

prejudicial, the State must show that it had "a compelling interest to exclude [the]

prejudicial or inflammatory evidence," i.e., an interest that outweighs the

defendant's need to present it. *Darden*, 145 Wn.2d at 621 (citing *Hudlow*, 99

Wn.2d at 15 (explicitly adopting "compelling interest" standard)).

Correctly applying the *Hudlow* test, exclusion of the toxicology evidence

violated Jennings' right to present a defense. As discussed above, the toxicology

evidence was undeniably relevant because it corroborates Jennings' alleged

reasonable fear. The evidence was not unfairly prejudicial, meaning that it did not

pose the risk of impeding the truth-finding process. *See Wilson v. Olivetti N. Am.,*

*Inc.*, 85 Wn. App. 804, 814, 934 P.2d 1231 (1997) (prejudice is unfair "only if it

has the capacity to skew the truth-finding process" (citing *Hudlow*, 99 Wn.2d at

12-13)). Jennings did not seek to ask the medical examiner to speculate on how

methamphetamine specifically affected Burton. And the trial court could have

limited the examiner's testimony to prevent unnecessary speculation. Jennings also

did not seek to introduce the evidence to prove that Burton actually acted

aggressively. Instead, as discussed, Jennings offered the evidence to corroborate

his claim of reasonable fear. The evidence was not cumulative; it provided

independent, objective corroboration of Jennings' claim of reasonable fear.

Because the State hasn't shown that the evidence would unfairly prejudice its case,

we do not proceed to the third step of *Hudlow*. Instead, we draw the conclusion

compelled by these first two steps: the trial court's decision to exclude the

toxicology evidence violated Jennings' right to present a defense.

But even if the toxicology evidence could be characterized as unfairly

prejudicial, the State has not presented any interest—much less a "compelling

interest"—outweighing Jennings' need to present it. The majority finds a

distinction "between evidence that merely bolsters credibility and evidence that is

necessary to present a defense." Majority at 14. But as noted, it's misleading to

characterize the toxicology evidence as "merely" bolstering credibility. Toxicology

evidence is unique in that it provides unbiased, objective corroboration that a

particular substance was found in a decedent's system. In a trial filled with

conflicting and inconsistent eyewitness testimony, Jennings' need to present the

jury with such objective corroborating evidence of his perceptions was critical.

*State v. Jennings (Justin Nicholas)*, No. 99337-8
(Gordon McCloud, J., concurring in part/dissenting in part)

The majority analogizes this case to *Hudlow*, where the court made a distinction between "evidence of the general promiscuity of a rape victim and evidence that, if excluded, would deprive defendant of the ability to testify to their versions of the incident." Majority at 14 (citing *Hudlow*, 99 Wn.2d at 17-18). But the type of evidence offered and excluded in *Hudlow* differs dramatically from the type of evidence offered and excluded in Jennings' case. In *Hudlow*, a rape and kidnapping case, defendant sought to present testimony from a person who claimed to know information about the sexual histories of the two complaining witnesses. 99 Wn.2d at 5. That proffered testimony differed in objectivity, bias, and relevance from the scientific evidence confirming that methamphetamine was in Burton's system. In *Hudlow*, the proffered testimony was highly prejudicial and contained inflammatory and pejorative terms describing the complaining witnesses. *Id.* Further, the sexual behavior described by that witness was irrelevant because it lacked connection to the time or place of the charges against the defendant and shared no factual similarities to those charges. *Id.* at 5, 10-11. Therefore, excluding that testimony did not deprive Hudlow of the ability to present his defense. By contrast, the toxicology evidence in this case was objective, not inflammatory, and specifically relevant to the actual events at the time and place of the charges. The

25

trial court's decision to exclude the only consistent corroborating evidence of Jennings' version of events deprived Jennings of his right to present a defense.

To assess the impact of this error, we apply the test for constitutional error: "An error is harmless and not grounds for reversal if the appellate court is assured [by the State] beyond a reasonable doubt that the jury would have reached the same verdict without the error." *State v. Romero-Ochoa*, 193 Wn.2d 341, 347, 440 P.3d 994 (2019). Because the exclusion of the evidence fails the test for nonconstitutional harmless error standard as discussed above, it logically fails the more stringent test for constitutional error. I therefore respectfully dissent from the majority's holding regarding the exclusion of the proffered toxicology evidence.

CONCLUSION

The toxicology evidence was relevant and admissible to support Jennings' claim of reasonable fear. The trial court's decision to exclude it constituted an abuse of discretion, and that exclusion was not harmless. If I needed to reach the constitutional question, I would hold that the trial court's decision to exclude the toxicology evidence violated Jennings' Sixth Amendment right to present a defense and that the State has failed to prove that this error was harmless beyond a reasonable doubt.

*State v. Jennings (Justin Nicholas)*, No. 99337-8
(Gordon McCloud, J., concurring in part/dissenting in part)

I agree with the majority's vacation of Jennings' sentence and its remand in light of *Blake.*

I therefore respectfully concur in part and dissent in part.

Gordon McCloud, J.

Whitener, J.

27