# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>ALYSSA RICHELLE KEELE,<br><br>Appellant. | No. 59201-1-II<br><br><br><br>UNPUBLISHED OPINION |

CRUSER, C.J.—Alyssa Keele appeals her conviction for vehicular homicide, arguing that the trial court violated her right to present a defense by excluding a video of the victim's reckless conduct prior to the incident. In the alternative, Keele appeals her sentence. Keele argues that the trial court abused its discretion by failing to recognize that it had the authority to impose a sentence below the standard range.

We conclude that although, as an evidentiary matter, the trial court abused its discretion by excluding the video, the error was harmless under both the constitutional and non-constitutional harmless error analysis. Therefore, even if exclusion of the video violated Keele's right to present a defense, reversal of Keele's conviction is not required. However, the trial court erred by denying Keele's request for an exceptional sentence below the standard range because the trial court failed to meaningfully consider Keele's request. Accordingly, we affirm Keele's conviction but reverse

her sentence and remand for a new sentencing hearing in which the trial court must consider Keele's request under a correct application of RCW 9.94A.535(1)(a).

FACTS

I. BACKGROUND

In July 2022, Alyssa Keele, while driving under the influence, ran over and killed her fiancé, Marcella Mangiola. Keele and Mangiola were arguing and Keele, who had been drinking, decided to get in the car and drive away. Keele was driving a Toyota 4Runner, a sport utility vehicle. When Keele tried to back out of the driveway, Mangiola stood behind the vehicle with her hands on the back and slowly walked backwards with the vehicle as Keele let off the brakes. The couple's roommate, Robin Damron, observed this interaction and took a video of it until the vehicle was no longer in view. The video is six seconds long, and the first three seconds of the video depict Keele's car moving very slowly backward while Mangiola walks behind the car with her hands on the rear windshield. At the three second mark, Mangiola moves out of the frame. Mangiola can briefly be seen walking to the driver's side of the vehicle where she remains, out of view, for the remainder of the video. The video depicts only the passenger side and rear of the vehicle and contains no audio. Although not depicted in the video, Mangiola eventually got into the vehicle in the passenger's seat. As Keele began to drive on the main street, the argument progressed and Mangiola asked to be let out of the vehicle. Keele stopped and let Mangiola out of the vehicle. Mangiola walked around to the driver's side of the vehicle and was pulled beneath the left rear tire as Keele drove forward. Keele immediately stopped and tried to assist Mangiola. Mangiola died as the result of her injuries from the collision. The State charged Keele with vehicular homicide under the influence.

## II. Trial

On December 5, 2023, at the start of trial, the defense provided the State with a copy of Damron's video for the first time. The defense had become aware of the video on August 16, 2022, when it interviewed Damron. At that time, Damron was not on either the State's or Keele's witness lists. The defense investigator referenced and described the video in his report, which he provided to the State on September 26, 2023. The State did not contact Damron about her potential testimony.

The State endorsed Damron as a witness on November 14, 2022. Keele endorsed Damron as a witness on August 28, 2023. Keele intended to use the video both to corroborate her own testimony, and to support her theory that the State could not prove beyond a reasonable doubt that Keele's intoxication was the proximate cause of Mangiola's death because Mangiola behaved recklessly by walking around the moving vehicle. The State moved to exclude Damron's video under CrR 4.7(b)(1) on the basis that the defense did not disclose the video prior to the omnibus hearing. The State further contended that the video was inadmissible because it was intended to bolster Keele's testimony. Keele argued that the video should not be suppressed because it is exculpatory and suppression would be an extreme remedy for any discovery violation that may have occurred because it compromises the defense. Defense counsel also argued that the video should be admitted because it is consistent with Keele's and Damron's proposed testimonies and "[c]onsistency of statements is important. It goes to credibility. . . . It's exculpatory because" it is evidence of Mangiola's dangerous conduct that eventually resulted in her own death. 1 Verbatim Rep. of Proc. (VRP) at 492.

The trial court excluded the video, ruling that the defense violated CrR 4.7(b)(1) when it failed to disclose the video to the State. The trial court further ruled that "the video would have been used to impermissibly bolster the defendant's testimony by supporting her credibility contrary to State v. Bourgeois [sic], 133 Wn. 2d 389, 400-401 (1997) which is another reason for its inadmissibility at trial." Clerk's Papers (CP) at 107.

The State called Damron as a witness. On cross-examination, defense counsel elicited testimony that, through her kitchen window, Damron saw Keele trying to back down the driveway while Mangiola stood behind the vehicle with her hands up against it. Mangiola kept her hands on the vehicle and walked backwards slowly as Keele backed down the driveway.

The State's witnesses testified that at the scene, Keele told law enforcement that "I think I went over [Mangiola]," meaning that she had driven over her. 2 VRP at 634. The court admitted Corporal Donnelly's body camera video into evidence and played it for the jury. In the video, Keele admitted that she had been drinking and that she was driving and "[w]e were having an argument, and she got out of the car. She started yelling at me. And I was like all right, I'm going to go. I'll be back in a little bit. I believe she was on the left side." *Id.* at 674. Keele also said "I don't know how she ended up like on the right side of me. Next thing I know, I just felt a bump. And I looked back, and she was on the ground, and I pulled over." *Id.* at 673-74.[1]

Keele testified in her own defense. Keele testified that she and Mangiola had gotten into an argument. Keele admitted that she drank multiple 16-ounce hard seltzers in the hours before the incident. Keele tried to leave, but Mangiola followed her outside and started pounding on the

---

[1] Keele appears to have misspoken here. Her testimony at trial was that Mangiola got out of the passenger side of the vehicle, which would be the right, and that she didn't see her come around to the driver's side, which would be the left.

4

windows of the car. Keele testified that Mangiola stood on the step up to the driver's door, grabbed the partially open window and continued to yell at Keele. When Keele started backing up, Mangiola ran behind the car. Keele continued to back down slowly with her foot on the brake and Mangiola would move back a few steps at a time. Eventually, at Keele's invitation, Mangiola got into the car with Keele. Mangiola continued to yell at Keele and said she was getting out and going back to the house, so Keele stopped and let her out. Keele started to go forward and then felt a bump. She stopped and could see Mangiola in the mirror, so she got out of the car and ran to help her. Keele testified that she "[n]ever" would have pulled out if she realized that Mangiola had circled around to the driver's side of the car. 3 VRP at 1123.

Sergeant Aman, an expert in collision reconstruction, testified that based on his investigation of the scene he believed:

> the pedestrian was on the left side of that vehicle, somehow attached, and as the vehicle was going northbound. And at some point, the feet of the pedestrian were being drug.
>
> And then at some point, the pedestrian comes off and goes underneath the vehicle, the left-rear tire. And the vehicle goes over the pedestrian, and then that's where you see the points of rest where the pedestrian initially came to rest.

2 VRP at 853-54. On cross-examination, defense counsel elicited testimony that it was possible that the contact that Sergeant Aman observed on the corner panel of the vehicle could have resulted from Mangiola's attempts to stop the car from leaving. Detective Corn testified that the driver's side window was partially open and that it appeared "that somebody had grabbed [the window] at one point or another from the outside." *Id.* at 730. And then the hand moved along the window down and toward the rear of the vehicle.

In closing argument, defense counsel argued that Mangiola was a superseding intervening cause of her own death. Defense counsel contended that had Mangiola chosen to disengage from her argument with Keele at any point, she would not have died. In making this argument, defense counsel used the interaction Damron witnessed as an example:

> Even if [Mangiola]'d got behind the car like we know she did, physically behind a 4,000-pound car and stood there trying to stop Ms. Keele from leaving, inch by inch -- you heard [Damron's] testimony.
>
> She very, very slowly, carefully, a couple inches, stop, a couple inches, stop, a couple inches, stop. [Mangiola's] talking behind the car. If she would've said, Oh, that's enough, go, she'd be alive.

3 VRP at 1247.

The jury convicted Keele of vehicular homicide.

### III. SENTENCING

At sentencing, Keele requested an exceptional sentence below the standard range under RCW 9.94A.535(1)(a), which provides that a court may impose an exceptional sentence where "to a significant degree, the victim was an initiator, willing participant, aggressor or provoker of the incident." *Id.* at 1316. Keele argued that Mangiola's behavior—walking around and touching a moving vehicle—was a proximate cause of her death and made her a willing participant in it. Keele also responded to a perceived argument from the State that the trial court did not have authority to impose an exceptional sentence by clarifying that the court had the discretion to impose an exceptional sentence under RCW 9.94A.535(1)(a), even if the jury did not find that Mangiola was a superseding cause.

The trial court explicitly agreed with defense counsel that there can be more than one proximate cause and that the trial court has discretion to impose an exceptional sentence even

6

though the jury did not find that Mangiola's conduct was a superseding cause of her death. But the trial court denied Keele's request for an exceptional sentence, emphasizing that DUI vehicular homicide is a strict liability offense and stating "if [Keele] hadn't been drinking, this would not have happened, even considering that [Mangiola] was a participant in the sense that she . . . [got] out of the car." *Id.* at 1326. The trial court imposed a sentence in the middle of the standard range. Keele appeals her conviction or, in the alternative, her sentence.

DISCUSSION

I. EXCLUSION OF VIDEO

Keele argues that the trial court violated her Sixth Amendment right to present a defense by excluding Damron's video. In the alternative, Keele contends that trial court abused its discretion by excluding the video because Keele did not violate her discovery obligation and the video did not impermissibly bolster Keele's credibility. Keele contends that this error was not harmless. We conclude that although the trial court abused its discretion by excluding the video, exclusion of the video was harmless under both the non-constitutional harmless error standard applicable to evidentiary error and the constitutional harmless error standard applicable to violations of the right to present a defense.

A. Standard of Review

Both the Washington State Constitution and the federal constitution provide criminal defendants with a right to present a defense. *State v. Romero-Ochoa*, 193 Wn.2d 341, 347, 440 P.3d 994 (2019); U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. In *State v. Arndt*, our supreme court clarified the two-part analysis for determining whether the exclusion of evidence violates a defendant's constitutional right to present a defense. 194 Wn.2d 784, 797-98, 453 P.3d 696 (2019).

First, we ask whether the trial court's evidentiary ruling was an abuse of discretion. *State v. Jennings*, 199 Wn.2d 53, 59, 502 P.3d 1255 (2022). If we conclude that the trial court did not abuse its discretion or that the abuse of discretion constituted non-constitutional harmless error, we review de novo whether exclusion of the evidence nonetheless violated the defendant's right to present a defense. *Id.* If we find a constitutional violation, we then determine whether the error was harmless using the constitutional harmless error test. *State v. Orn*, 197 Wn.2d 343, 359, 482 P.3d 913 (2021).

B. Evidentiary Error

Keele argues that the trial court abused its discretion by excluding the video from evidence because the video is relevant and did not impermissibly bolster Keele's defense, and defense counsel did not violate the discovery rule. The State concedes that exclusion of the video constitutes an evidentiary error. We accept the State's concession. The trial court excluded Damron's video, in part, on the basis that "the video would have been used to impermissibly bolster the defendant's testimony by supporting her credibility contrary to State v. Bourgeois [sic]." CP at 107. *State v. Bourgeois*, 133 Wn.2d 389, 400, 945 P.2d 1120 (1997), held that the trial court abused its discretion by admitting evidence that was relevant only to the witness' credibility where the witness' credibility had not been attacked. It does not stand for the proposition that otherwise relevant or corroborating evidence should be excluded merely because it supports a witness' version of events.

Damron's video depicting the events leading up to the incident was relevant because it could have been helpful to the jury and was not in any way prejudicial to the State. Although the video is scant, it could have been used by Keele to support her theory that Mangiola disregarded

her own safety by touching a moving vehicle, and that the jury could infer that she behaved with equal carelessness when, after driving away with Keele some moments later, she got out of the car and apparently walked over to the rear driver's side of the car. Even more importantly, though, is that video, even if the jury might have ultimately found it unhelpful, would not have confused the jury nor prejudiced the State.

Equally untenable was the trial court's conclusion that exclusion of the video was an appropriate remedy for Keele's alleged violation of CrR 4.7. Even if Keele had violated CrR 4.7, the State was aware of the existence of the video months before trial and, as Keele notes, was equally capable of requesting a copy of the video from Damron. Moreover, even if the State had been unfairly surprised by the video, exclusion of the evidence is an extraordinary and disfavored remedy. *State v. Vance*, 184 Wn. App. 902, 911, 339 P.3d 245 (2014) ("Exclusion or suppression of evidence . . . for a discovery violation is an extraordinary remedy and should be applied narrowly."). If the State had truly articulated a danger of unfair prejudice owing to late disclosure of the video, the trial court was required to consider lesser remedies such as granting a continuance. *State v. Hutchinson*, 135 Wn.2d 863, 882-83, 959 P.2d 1061 (1998), *abrogated on other grounds by State v. Jackson*, 195 Wn.2d 841, 856, 467 P.3d 97 (2020).

Excluding the video on the bases cited by the trial court was a clear abuse of discretion. Accordingly, we review the trial court's exclusion of the video for non-constitutional harmless error. *State v. Jennings*, 14 Wn. App. 2d 779, 789, 474 P.3d 599 (2020), *vacated in part on other grounds*, 199 Wn.2d 53, 502 P.3d 1255 (2022). A non-constitutional error is " 'not prejudicial unless, within reasonable probabilities, had the error not occurred, the outcome of the trial would

have been materially affected.' " *State v. Smith*, 106 Wn.2d 772, 780, 725 P.2d 951 (1986) (quoting *State v. Cunningham*, 93 Wn.2d 823, 831, 613 P.2d 1139 (1980)).

Here, the record suggests that the outcome of the trial would not have been materially affected if the trial court had admitted the video. The video corroborates Keele's and Damron's testimonies that Mangiola had been touching Keele's moving vehicle in what may have been an effort to stop her from leaving the driveway. But the events in the driveway were separated in time from the final confrontation at the car when Keele ran Mangiola over. The video did not show Mangiola's actions immediately preceding her death. Keele wanted the jury to infer that because Mangiola behaved carelessly in the driveway, she must also have behaved carelessly or even recklessly just prior to the accident. Even without the video, however, Damron and Keele testified about what occurred in the driveway. And Keele discussed the events depicted in the video in her closing argument. The three seconds of the video in which Mangiola is seen slowly walking behind Keele's car with her hands on the back windshield as Keele slowly reverses was not particularly helpful or harmful to either the defense or the State. In light of the other evidence Keele put forth, it is not reasonably probable that the outcome of the trial would have been different. We conclude that the trial court's exclusion of Damron's video was harmless under the non-constitutional harmless error standard applicable to evidentiary errors.

Because we conclude that the trial court's exclusion was not reversible error as an evidentiary matter, we next address the constitutional question. *Jennings*, 199 Wn.2d at 59.

C. Constitutional Right to Present a Defense

Criminal defendants have a constitutional right to present a defense. U.S. CONST. amend. VI; WASH. CONST. art. I, §§ 3, 22. However, because that right is not absolute, the reviewing court

must balance the State's interest in excluding the evidence against the defendant's need for the information. *Arndt*, 194 Wn.2d at 812.

We "must weigh the defendant's right to produce relevant evidence against the State's interest in limiting the prejudicial effects of that evidence to determine if excluding the evidence violates the defendant's constitutional rights." *Jennings*, 199 Wn.2d at 63. Reviewing courts consider whether "the defendant had the opportunity to present [their] version of the incident, even if some evidence was excluded." *Id.* at 66. If the excluded evidence would have bolstered the defendant's argument, but was not essential to the argument, the defendant's right to present a defense may be outweighed by the State's interest in avoiding prejudice. *Id.* at 67. If a violation occurred, the State has the burden of demonstrating beyond a reasonable doubt that the error is harmless. *Orn*, 197 Wn.2d at 359. Under constitutional harmless error review, an error is harmless where the appellate court is satisfied that the jury would have reached the same verdict without the error. *Id.*

On one hand, Damron's video was not essential to Keele's argument that Mangiola's conduct was a superseding intervening cause of her death. Although Keele contends that the video is irrefutable evidence of Mangiola's dangerous conduct leading up to her death, the events depicted in the video—Mangiola standing behind the vehicle as Keele slowly backed toward her— were established by uncontroverted testimony from both the State's and Keele's witnesses. Keele and Damron testified concerning the events depicted in the video and defense counsel referenced the event in closing argument. During the three seconds of video depicting Mangiola, she walks slowly backward with her hands on the vehicle. Mangiola does not appear to be yelling, banging on the vehicle, or otherwise behaving in an especially erratic or aggressive manner. The single

controverted aspect of the incident in the driveway was whether Mangiola grabbed the window in the driveway, as Keele testified, or in the moments before her death as the State's experts suggested. But the video faces the passenger's side of the vehicle, so it could not show Mangiola grabbing on to the window if that occurred. Thus, there is nothing depicted in the video that would cause the jury to either accept or reject Keele's version of events. Therefore, even without the video, Keele had the opportunity to present her version of the incident.

On the other hand, admission of the video would not have prejudiced the State. The State could have easily reviewed the six-second video prior to trial and prepared to question its witnesses about it, especially in light of the fact that the State was aware of the underlying facts depicted in the video. Moreover, as previously described, the video depicts a minor moment leading up to the events in question that was separated in time from the actual event resulting in Mangiola's death. In other words, in this particular case, the evidence in question was so insignificant that it likely would not have helped or harmed either side by its admission.

In sum, we are satisfied that the jury would have reached the same verdict even if the video had been admitted. Even assuming the trial court violated Keele's constitutional right to present a defense by excluding the video, the error was harmless beyond a reasonable doubt.

## II. DENIAL OF EXCEPTIONAL SENTENCE

Keele argues that the trial court erred as a matter of law by denying Keele's request for an exceptional sentence on the bases that vehicular homicide is a strict liability crime and the jury rejected Keele's superseding intervening cause defense. The State responds that Keele mischaracterizes the trial court's oral ruling and asserts that the trial court recognized its discretion

to impose a mitigated sentence but declined to do so. We conclude that the trial court erred by failing to meaningfully consider Keele's request for an exceptional sentence.

Defendants are generally not entitled to challenge a sentence within the standard range, but such a sentence is reviewable where the court refused to exercise its discretion at all or relied on impermissible bases for refusing to impose an exceptional sentence. *State v. McFarland*, 189 Wn.2d 47, 56, 399 P.3d 1106 (2017). Additionally, when a trial court is asked to consider a discretionary sentence it "must meaningfully consider the request in accordance with the applicable law." *Id.*

Here the trial court verbally acknowledged its discretion to impose an exceptional sentence, but its oral ruling indicates that the trial court believed that an exceptional sentence would never be appropriate where the defendant committed a strict liability crime and the victim's participation in the event was not a superseding intervening cause. The trial court appeared to be focused on the fact that DUI vehicular homicide is a strict-liability offense, but the victim's willing participation in a strict liability offense, while not relevant to a determination of guilt, can mitigate a defendant's culpability for purposes of sentencing. *State v. Clemens*, 78 Wn. App. 458, 467, 898 P.2d 324 (1995) (affirming trial court's decision to grant exceptional sentence below standard range where victim initiated sexual contact forming basis of statutory rape conviction). Furthermore, while RCW 9.94A.535(1)(a) allows a trial court to impose a discretionary downward sentence based on the victim's conduct, the trial court's reasoning for denying Keele's request focused almost entirely on Keele's behavior. The trial court rested its decision to decline Keele's request for an exceptional sentence on its assessment that "if [Keele] hadn't been drinking, this would not have happened, even considering that [Mangiola] was a participant in the sense that she was in the car,

and they were arguing." 3 VRP at 1326. Nowhere in the trial court's oral ruling does it address Keele's argument that Mangiola's decision to walk around to the driver's side of the vehicle and continue the argument constituted a mitigating circumstance. Accordingly, the trial court erred by failing to meaningfully consider Keele's request for an exceptional sentence.

## CONCLUSION

We conclude that although, as an evidentiary matter, the trial court abused its discretion by excluding Damron's video, the error was harmless under both the constitutional and non-constitutional harmless error analysis. Therefore, even if exclusion of the video violated Keele's right to present a defense, reversal of Keele's conviction is not required. However, the trial court erred by denying Keele's request for an exceptional sentence below the standard range because the trial court failed to meaningfully consider Keele's request.

Accordingly, we affirm Keele's conviction but reverse her sentence and remand for a new sentencing hearing in which the trial court must consider Keele's request under a correct application of RCW 9.94A.535(1)(a).

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

No. 59201-1-II

CRUSER, C.J.

We concur:

LEE, J.

GLASGOW, J.